676 F.2d 1159
 82-1 USTC P 9334
 PHILADELPHIA & READING CORPORATION, Plaintiff-Appellant,
v.
Roger C. BECK, District Director, Internal Revenue Service,
Defendant-Appellee.
PHILADELPHIA & READING CORPORATION, Plaintiff-Appellee,
v.
Roger C. BECK, District Director, Internal Revenue Service,
Defendant-Appellant.
 Nos. 81-1623, 81-1648.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 8, 1981.
Decided April 20, 1982.
 
 Glen H. Kanwit, Hopkins & Sutter, Chicago, Ill., for plaintiff-appellant/plaintiff-appellee.
 Carleton D. Powell, Tax Div., Dept. of Justice, Dept. of Justice, Tax Division, Washington, D.C., for defendant-appellant/defendant-appellee.
 Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and POSNER, Circuit Judge.
 CUMMINGS, Chief Judge.
 
 
 1
 Philadelphia & Reading Corporation (taxpayer) sued the District Director of the Internal Revenue Service for the Chicago District (IRS) to enjoin the collection of approximately $14,000,000[1] in federal income taxes on the ground that the prerequisite assessments of a tax deficiency were illegal. The illegality supposedly stemmed from the IRS's failure to give the proper statutory notice of deficiency under Sections 6212(a) and 6213(a) of the Internal Revenue Code (26 U.S.C. §§ 6212(a) and 6213(a)).[2] The complaint asserted that in the absence of a proper statutory notice of deficiency, the making of the assessments with respect to the taxable years 1965 and 1966 and the taxable period ended on April 30, 1968, was prohibited.
 
 
 2
 In its answer to the complaint, the IRS asserted that it was unnecessary to issue the taxpayer a notice of deficiency for the periods in question prior to assessing the deficiency. According to the IRS, the taxpayer had waived the notice restrictions provided in Section 6213(a). Therefore, the IRS argued, the assessments made on June 22, 1973, became valid and enforceable before the statute of limitations expired, and no injunction should issue.
 
 
 3
 The district court held that Section 6213(a) "authorizes the issuance of an injunction to restrain collection of an improperly assessed tax but does not mandate it" (App. A 20). Employing equitable principles, Judge Marshall enjoined the IRS from enforcing income tax deficiencies against the taxpayer in any amount in excess of $4,060,184 (plus interest), which was the amount that the parties had agreed would be due after the IRS credited the deficiencies with overpayments in 1964 and 1967 totaling $6,469,651. 47 A.F.T.R.2d 740 (1980). We affirm.
 
 Introduction
 
 4
 In the fall of 1972, the IRS completed an audit of the taxpayer and its subsidiaries for five taxable periods. Two of the periods resulted in income tax overpayments while the other three resulted in income tax deficiencies as shown on the following table:
 
 
 5
 Taxable Period
 Ended Deficiency Overpayment
----------------- ----------- -----------
December 31, 1964 $ 231,991
December 31, 1965 $ 19,485
December 31, 1966 9,336,231
December 31, 1967 6,237,660
April 18, 1968 1,174,119
 ----------- -----------
 $10,529,835 $6,469,651
Net Deficiency: $ 4,060,184
 -----------
 
 
 6
 At that point, the above audit schedule was agreed to conditionally by the taxpayer's inside tax counsel, who testified that it was the taxpayer's intention to pay the net deficiency plus interest.
 
 
 7
 On December 13, 1972, the taxpayer executed a qualified Form 870 to carry out the settlement agreement. By that form, the taxpayer waived notice and other restrictions on the assessment and collection of the foregoing deficiencies and agreed to the correctness of the overpayments and net deficiency subject to a condition. The condition upon which the waiver depended provided that the overpayment periods first be executed by an IRS official on a schedule of overassessments pursuant to Section 6407 of the Code. This condition was described as follows:
 
 
 8
 This document shall be effective as a waiver of restrictions on assessments and collections with respect to the taxable years ending December 31, 1965 and December 31, 1966 and the taxable period ending April 18, 1968 on the date the schedule of overassessments with respect to the taxable years ending December 31, 1964 and December 31, 1967 is signed by an authorized representative of the Internal Revenue Service.
 
 
 9
 Ordinarily, a deficiency cannot be assessed nor collection efforts begun until the taxpayer is given a notice of the deficiencies and ninety days to file a petition in the Tax Court. Section 6213(a). The purpose of the above condition was to satisfy the taxpayer's understandable unwillingness to pay the $10,529,835 deficiencies while awaiting approval of the $6,469,651 total overpayments by the Congressional Joint Committee on Internal Revenue Taxation.[3] The taxpayer did not want the three deficiencies assessed until the two overpayments could be offset against them. And if the Joint Committee failed to approve the overpayments, the waiver would be ineffective, allowing the taxpayer to contest the matter in the Tax Court prior to payment of the stated deficiencies.
 
 
 10
 On June 19, 1973, the taxpayer's case had cleared the Joint Committee, thus permitting the IRS to pay refunds to the taxpayer in excess of $100,000 under Section 6405(a). Both overpayments were actually credited to taxpayer in August 1973, before the expiration of the applicable statute of limitations. The schedules of overpayments with respect to the taxable years 1964 and 1967 were signed by "an authorized representative of the Internal Revenue Service" in August and October 1973, respectively, thus satisfying the express condition in the waiver Form 870.[4]
 
 
 11
 On December 4, 1973, the taxpayer's counsel was given a computer print-out sheet showing that the two overpayments had been credited against the deficiencies and that the IRS was seeking to collect only the $4,060,184 net deficiency. Counsel also learned that the schedule of assessment procedure mentioned in Section 6407 and in the Form 870 had been replaced by computer processing. Nevertheless the taxpayer filed this lawsuit even though the Commissioner was seeking to collect only the agreed net deficiency and the promised schedules of overassessments had both been signed.
 
 Validity of the Assessments
 
 12
 When the IRS completed its audit of the taxpayer in the autumn of 1972, a demand could have been made upon the taxpayer to pay the $4,060,184 net deficiency following the 90-day notice prescribed by Section 6213(a) of the Internal Revenue Code. Indeed, the IRS could have demanded payment of the $10,529,835 total deficiency and forced the taxpayer to recoup its overpayments separately. However, as seen, since the two overpayments were in excess of $100,000 the Secretary of the Treasury could not authorize their scheduling until a report was made to the Congressional Joint Committee on Internal Revenue Taxation, with the Joint Committee afforded 30 days within which to express its objections. Prior to the scheduling of overassessments contemplated by Section 6407, the IRS could disapprove a refund or credit regardless of the position taken by the Joint Committee. Thus the taxpayer might have to wait a considerable period of time for the payment or credit of its overassessments, if forthcoming. Consequently, the taxpayer executed the Form 870 conditional waiver of the 90-day notice of deficiency prescribed in Section 6213(a) of the Code and consented to the assessment and collection of the $4,060,184 net deficiency plus interest. However, as seen, the taxpayer made its waiver conditional "on the date the schedule of overassessments with respect to the taxable years ending December 31, 1964 and December 31, 1967 is signed by an authorized representative of the Internal Revenue Service."
 
 
 13
 While the matter was under consideration by the Joint Committee, the Chicago district office of the IRS sent at least some of the relevant control documents to the IRS Kansas City Service Center with instructions to process the case. Under procedures at the Service Center, when the control documents indicate deficiencies of over $50,000, the deficiencies are automatically assessed unless the Service Center has been instructed not to make an assessment. Accordingly, in early 1973, the Service Center issued a $14,000,000 assessment to taxpayer even though no 90-day notice had been sent to taxpayer as required under Section 6213(a) of the Code and the condition of taxpayer's waiver of notice had not been met since its overpayments had not yet been scheduled. This caused the taxpayer's tax counsel to telephone an employee of the Service Center requesting her to abate the assessments. She promptly complied.
 
 
 14
 On June 22, 1973, the same employee of the Service Center who had sent the taxpayer the improper assessments again sent similar assessments because she thought the statute of limitations was expiring on June 30, 1973. When the Service Center issued the $14,000,000 tax bills in June 1973, it had not been informed that the taxpayer had already consented to extend the statute to September 30, 1973.
 
 
 15
 On June 26, 1973, the taxpayer was advised that on June 19, 1973, the Joint Committee approved the IRS determination of the taxpayer's overpayments for 1964 and 1967, thus enabling the Treasury Secretary's delegate to authorize the scheduling of the overassessments under Section 6407 of the Internal Revenue Code.
 
 
 16
 After receiving the $14,000,000 tax bills, the taxpayer's inside tax counsel notified the Kansas City Service Center that the assessments were premature since the condition of the Form 870 waiver had not yet been met. At the same time he advised the Kansas City office that the taxpayer had consented to an extension of the statute of limitations until September 30, 1973. This resulted in the staying of the collection of the bills until after the taxpayer's account was credited in August 1973 with the amounts of the 1964 and 1967 overpayments totaling $6,469,651, leaving a net deficiency of $4,060,184.
 
 
 17
 In the fall of 1973 the IRS requested payment of the $4,060,184 net deficiency. This prompted the taxpayer to file the present lawsuit on December 21, 1973, claiming that the June 22nd assessments were illegal because at that time the schedule of overassessments with respect to the overpayment years had not been signed by an authorized representative of the IRS as contemplated by the Form 870, thus allegedly obliging the IRS to issue a 90-day notice to the taxpayer as a condition precedent to the June 22nd assessments. Such a notice had not been issued. The IRS contends that despite the express language of the waiver, scheduling of assessments is outmoded under current procedures and we should not stultify its now more efficient bureaucracy. But under Section 6407 of the Internal Revenue Code, the taxpayer had no right to the $6,469,651 overpayments until the Secretary's delegate authorized the scheduling of the overassessments, and such scheduling took place here in August and October 1973 pursuant to the Form 870. Moreover, without such an overt act by the IRS, the IRS might be free to change its mind even after Joint Committee clearance. Therefore we refuse to hold that the scheduling contemplated by the conditional Form 870 was not required.
 
 Appropriate Remedy
 
 18
 We agree with the district court that the June 22, 1973, $14,000,000 assessments were premature and illegal for failure to comply with the Form 870 or the notice requirement of Section 6213(a), and that the issuance of new assessments was precluded because the statute of limitations expired on September 30, 1973. Nevertheless, it would be a gross windfall to the taxpayer if we enjoined the entire June 22, 1973, deficiency assessments merely because it was not until August and October 1973 when the schedules of the 1964 and 1967 overassessments were signed by an authorized representative of the IRS.
 
 
 19
 As the district court realized, this lawsuit depended upon the court's equity jurisdiction. While Section 6213(a) authorizes the issuance of an injunction to restrain collection of the tax predicated upon illegal assessment, the district court in its discretion may decide that injunctive relief is unjustified because the taxpayer has failed to show irreparable harm or the inadequacy of legal remedies. See Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57-65, 95 S.Ct. 2069, 2075-79, 45 L.Ed.2d 12; Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1, 6, 82 S.Ct. 1125, 1128, 8 L.Ed.2d 292 (dictum); Steiner v. Nelson, 259 F.2d 853, 858 (7th Cir. 1958) ("From (an improper assessment) it follows that the district court could, and properly did, bring its equity powers into play * * *."); Hogan v. United States, 32 A.F.T.R.2d 5507, 5510-5511 (E.D.Mich. June 25, 1973); Gruber v. Commissioner, 48 A.F.T.R.2d 81-6100 (D.N.J. Oct. 28, 1981). The taxpayer argues that by allowing taxpayers to sue in the Tax Court prior to payment of the taxes, Congress has deemed inadequate per se the legal remedy of suing for a refund after payment of the taxes. In many cases this argument would be correct; assessments that violate the notice requirements of Section 6213(a) should be enjoined if the effect would be to prevent taxpayers from using the Tax Court. But equity does not require the injunction of premature assessments when the taxpayer has no interest in contesting its taxes in the Tax Court and there is no other irreparable hardship caused by a violation of Section 6213(a). The taxpayer here has shown that equity supports an injunction with respect to the illegal $14,000,000 June 22nd deficiency. However, it has made no such showing with respect to the $4,060,184 net deficiency which resulted from the 1972 audit and which the taxpayer had agreed to pay. Therefore Section 6213(a), which is in precatory form, did not require the district court to enjoin the collection of the net deficiency.
 
 
 20
 In executing the Form 870 the taxpayer waived the issuance of a 90-day notice in essence on condition that it receive credit under Section 6407 of the Internal Revenue Code for the overpayments in 1964 and 1967. It was so credited in August 1973 before the statute of limitations expired on September 30, 1973. Since the administrative foibles caused no harm to the taxpayer, it would be grossly inequitable to forgive the net deficiency of $4,060,184. Therefore the district judge properly enjoined the IRS from attempting to enforce income tax deficiencies in excess of $4,060,184 plus interest.
 
 Cross-Appeal
 
 21
 The IRS filed a protective notice of cross-appeal on the ground that the conditional language of Form 870 was satisfied prior to the making of the assessments on June 22, 1973. We disagree in that the condition of the waiver was not to be effective until "the date the schedule of overassessments * * * is signed by an authorized representative of the Internal Revenue Service." Since that condition was not satisfied until several months after the making of the June 22nd assessments, those assessments were clearly premature and invalid under the principles of Steiner v. Nelson, 259 F.2d 853 (7th Cir. 1958) and United States v. Yellow Cab Co., 90 F.2d 699 (7th Cir. 1937).[5]
 
 
 22
 Nevertheless, to protect the Government from any unjust refund suit the taxpayer might file after paying the net deficiency plus interest, we hold that collateral estoppel may not be asserted against the Government with respect to the deficiencies. After filing this lawsuit the taxpayer indeed filed claims for refund of the very overpayments at issue here and if collateral estoppel were applied, the taxpayer might actually recover the overpayments formerly offset by the deficiencies. By its election to sue for a refund, however, the taxpayer has chosen to accept the benefits of the Form 870 agreement. It cannot simultaneously argue that the settlement embodied therein is null and void. If we adopted the taxpayer's position and forbade the Government to collect the entire June 22, 1973, assessments of $14 million and if collateral estoppel applied, even though the taxpayer had previously admitted it owed the Government a net deficiency, the taxpayer could be receiving back from the Government $6 million, for a total $10 million windfall (no payment of $4 million net deficiency plus $6 million recovery of overpayments). Similarly, given the district court's injunction of all but the $4,060,184 net deficiency, if collateral estoppel applied, the taxpayer could be receiving a $6 million windfall (recovery of the overpayments). The taxpayer cannot have its cake and eat it too.
 
 
 23
 The district court's final injunction order is affirmed.
 
 APPENDIX
 
 24
 Section 6212(a) of the Internal Revenue Code provides:
 
 Notice of deficiency
 
 25
 In general.-If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, 44, or 45, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.
 
 
 26
 Section 6213(a) of the Internal Revenue Code provides:Restrictions applicable to deficiencies; petition to Tax Court
 
 
 27
 Time for filing petition and restriction on assessment.-Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6851 or section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 41, 42, 43, 44, or 45 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.
 
 
 28
 Section 6405(a) of the Internal Revenue Code provided in the pertinent years:
 
 Reports of refunds and credits
 
 29
 By Treasury to Joint Committee.-No refund or credit of any income, war profits, excess profits, estate, or gift tax in excess of $100,000 shall be made until after the expiration of 30 days from the date upon which a report giving the name of the person to whom the refund or credit is to be made, the amount of such refund or credit, and a summary of the facts and the decision of the Secretary or his delegate, is submitted to the Joint Committee on Internal Revenue Taxation.
 
 
 30
 Section 6407 of the Internal Revenue Code provides:
 
 Date of allowance of refund or credit
 
 31
 The date on which the Secretary or his delegate first authorizes the scheduling of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit in respect of such tax.
 
 
 32
 Section 7421(a) of the Internal Revenue Code provides:
 
 
 33
 Prohibition of suits to restrain assessment or collection
 
 
 34
 Tax.-Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.
 
 
 
 [1]
 The assessment was a total of $27,343.79 in deficiency and interest for the taxable year 1965, $12,355,866.70 for the taxable year 1966, and $1,441,159.56 for the period ending April 30, 1968. We will refer herein to the total as $14,000,000
 
 
 [2]
 The relevant provisions of the Internal Revenue Code of 1954 are set forth in the Appendix hereto. Although paragraph 6 of the complaint referred to Sections 6211(a) and 6212(a), it is clear that Sections 6212(a) and 6213(a) are the germane provisions
 
 
 [3]
 In the pertinent years, Section 6405(a) of the Internal Revenue Code provided that no refund or credit of income tax over $100,000 could be made until 30 days after review by the Joint Committee
 
 
 [4]
 The August signature authorized the $231,991 overpayment and the October signature authorized the $6,237,660 overpayment
 
 
 [5]
 Steiner held a Form 870M (the predecessor of Form 870) invalid because unsigned by the Commissioner. Therefore the assessments were void under Section 6213(a) and enjoinable for want of notice to the taxpayer. In Yellow Cab Co., the deficiency assessment was held illegal because statutorily barred while the taxpayer's refund petition was pending before the Board of Tax Appeals