**48**

The PARSONS CORPORATION and the Ralph M. Parsons Company, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CV 85–6879 AWT.

United States District Court, C.D. California.

Jan. 29, 1987.

Patrick G. Woosley, Jordan P. Weiss, Pasadena, Cal., for plaintiffs.

Robert C. Bonner, U.S. Atty., Edward M. Robbins, Jr., Asst. U.S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM DECISION

TASHIMA, District Judge.

This is an income tax refund action in which plaintiffs The Parsons Corporation and The Ralph M. Parsons Company (collectively "Parsons") seek a refund of $571,-914, plus statutory interest. The taxpayers allege that the taxes at issue were assessed and collected illegally. Both Parsons and the government have moved for summary judgment. The parties agree that this dispute is appropriate for resolution by summary judgment, as there are no material facts in dispute; in fact, they have filed a Joint Statement of Uncontroverted Facts ("Facts"). The Court has jurisdiction under 28 U.S.C. § 1346(a)(1). Because this is a procedural dispute, resolution of the issues raised requires a detailed chronology of the procedural events.

### I. PROCEDURAL BACKGROUND

On April 17, 1974, the Internal Revenue Service (the "IRS" or "Service") finished an examination of Parsons' records for four taxable periods ending December 30, 1966, January 3, 1969, January 2, 1970 and January 1, 1971. The IRS examiner concluded that Parsons had overpaid taxes in 1966, 1969 and 1971, amounting to total overassessments of $497,424. The examiner also concluded that Parsons owed a deficiency of $100,891 for 1970. Facts at 3. Acting pursuant to IRS procedures, the examiner asked Parsons to sign IRS Form

870–C, a waiver of the restrictions on assessments and collections contained in 26 U.S.C. § 6213(a).[1]

Section 6213(a) provides, subject to some exceptions that do not apply here, that no assessment of a deficiency and no levy or proceeding in court for its collection can be made, begun, or prosecuted until (1) a notice of the deficiency (also called a "90–day letter") has been mailed to the taxpayer, and until the later of (2) the expiration of the time limit for the taxpayer to file a petition with the Tax Court (normally 90 days), or (3) if such a petition has been filed, the time when the decision of the Tax Court has become final.[2] Section 6213(d) permits the taxpayer to waive the restrictions in § 6213(a).[3] IRS Form 870–C is the mechanism for effecting that waiver.

Parsons refused to sign an unconditional waiver of its rights under § 6213(a). The examiner informed Parsons that it could file a conditional waiver by adding the following language to Form 870–C from Internal Revenue Manual § 4576(6)(a)1:

> This waiver of restrictions on assessment and collection is to take effect as a waiver of the restrictions on the date the schedule allowing the foregoing overassessments is signed.

Facts at 4. The advantage to the taxpayer of the conditional waiver was that it required the IRS to wait to assess the deficiencies until the schedule of overassessments had been reviewed by the Joint Committee on Internal Revenue Taxation (the "Joint Committee"), approved and signed by the Service.[4] At that point, the deficiency could be assessed and collected by offsetting the overassessments against the deficiency.

Parsons signed a conditional Form 870–C on April 17, 1974. At the same time, Parsons agreed to extend the statute of limitations for assessment of additional income taxes for the years at issue until June 30, 1975. Two months later, the Service proposed an additional deficiency of $471,023 for 1970 and an additional overassessment of $42,386 for 1971. Parsons signed another conditional Form 870–C regarding these amounts. Facts at 5.

On May 22, 1975, the Joint Committee notified the Service that it had approved Parsons' refund. At this point, the IRS could have immediately assessed and collected the taxes by signing the schedule of overassessments, but it did not do so.

On June 27, 1975, the IRS assessed a deficiency of $571,914 against Parsons for 1970. This amount was the total of the deficiencies listed on Parsons' two 870–C forms. The IRS assessed this deficiency without issuing the 90–day notice required by § 6213(a).

The limitations period on assessments and collections for the years at issue expired on July 1, 1975. However, on August

---

1. All subsequent statutory references are to the Internal Revenue Code of 1954, as amended, as codified in Title 26 U.S.C.

2. Section 6213(a) provides in pertinent part:

   Within 90 days ... after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6851 or section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 41, 42, 43, 44 or 45 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer nor until the expiration of such 90–day ... period, ... nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding

   the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

3. Section 6213(d) provides:

   The taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency.

4. At the time of the examinations here in question, no refund or credit of over $100,000 could be made until 30 days after a report was submitted to the Joint Committee, pursuant to § 6405(a). Thus, the $497,424 in overassessments proposed by IRS required Joint Committee review. Facts at 5.

4, 1975, the IRS signed the schedule allowing Parsons' overassessments and collected the June 27 assessment by applying the just-approved overpayments (that otherwise would have been refunded to Parsons) against the deficiency.

On December 30, 1975, Parsons filed its request for a refund of the June 27 assessment of $571,914, plus interest, contending that the deficiency had been assessed in violation of the restrictions in § 6213(a). On August 17, 1978, the Service issued a 30–day letter proposing disallowance of the refund. Parsons protested the proposed disallowance and requested a hearing in the Appellate Division of the Regional Commissioner's Office. On October 19, 1983, the Regional Commissioner issued a letter disallowing the refund claim. Parsons then filed this refund action.

## II. DISCUSSION

Parsons argues that by failing to issue a 90–day deficiency notice, the Service made an assessment in violation of § 6213(a); thus, that the assessment is void. Parsons further contends that its waiver of the § 6213(a) restrictions on assessment was ineffective because the condition of the waiver—that the IRS sign and approve the schedule of Parsons' overassessments— was not met before the Service made the assessment. Finally, Parsons asserts that the Service collected the assessment illegally, after the statute of limitations for collections had expired. The Service responds that it gave Parsons what it was supposed to receive—a timely assessment of its deficiency and simultaneous offset of the overassessments and the deficiency. The Service contends that Parsons suffered no prejudice from its failure to issue a deficiency notice.

Under § 6213(a), the Service clearly had an obligation to provide Parsons with a 90–day deficiency notice before making any assessment of a deficiency. Although the statute provides for certain exceptions to the 90–day notice requirement, *see* § 6213(a) & (b), the fact that the taxpayer might later suffer no prejudice from the lack of notice is *not* one of the exceptions listed. None of the statutory exceptions applies here.

■ By signing a conditional waiver of restrictions, Parsons stated, in effect, that it refused to give up its right to a deficiency notice, its right to a 90–day grace period before the deficiency could be assessed and its right to contest the deficiency in Tax Court before it had to pay the tax, unless it was certain it would receive the benefit of the scheduled overassessments. Even though the Joint Committee had approved the overassessments, until the schedule of overassessments was signed pursuant to § 6407, the IRS could still disapprove a refund or credit regardless of the position taken by the Joint Committee. *See Philadelphia & Reading Corp. v. Beck,* 676 F.2d 1159, 1162–63 (7th Cir.1982).

It is uncontroverted that no deficiency notice was ever issued to Parsons. It is equally clear that no waiver of the restrictions on assessment was in effect when the IRS assessed the deficiency on June 27, 1975. The condition in the waiver forms that the schedule of overassessments be signed before the waiver could be effective was not satisfied. Even though the Joint Committee had approved the schedule of overassessments on May 22, 1975, the schedule still had not been signed, and thus approved, by the IRS when it made the June 27 assessment. Indeed, the schedule was not signed until August 4, 1975, when the IRS sought to apply the overassessments against the deficiency—over a month after the statute of limitations on collections had expired. The Service provides no explanation for this delay.[5] The

5. The IRS states that, including statutory interest, "if successful, the taxpayer will receive a refund of over $1,000,000 from the government." Deft's proposed Statement of Uncontroverted Facts at 2. Given the size and consequence of the "oversight," it is understandable that no bureaucrat cares to admit sufficient

involvement with the matter which an explanation would imply. What happened here appears to be similar to that most common of attorney malpractice errors—the failure to calendar (or double calendar) the statute of limitations' expiration date. One (as a taxpayer) would hope that this case has caused, if not bureaucratic

Ninth Circuit has held in a similar case of purported waiver of restrictions on assessment and collection that "[i]f a taxpayer's waiver of restrictions is given upon a condition, the Commissioner may not take advantage of the waiver without complying with the condition." *Ventura Consol. Oil Fields v. Rogan*, 86 F.2d 149, 154 (9th Cir.1936), *cert. denied*, 300 U.S. 672, 57 S.Ct. 610, 81 L.Ed. 878 (1937). Because the condition here had not been met at the time of the June 27 assessment, no valid waiver of Parsons' rights was in effect; therefore, the assessment was made in contravention of § 6213(a).

■ Parsons argues that an assessment in violation of the statute is void. *See Bromberg v. Ingling*, 300 F.2d 859, 861–62 (9th Cir.1962); *Ventura Consol. Oil Fields*, 86 F.2d at 154. *See also Philadelphia & Reading Corp.*, 676 F.2d at 1164. The Service contends that assessments in violation of § 6213(a) are merely voidable, citing *Lyddon & Co. v. United States*, 158 F.Supp. 951, 141 Ct.Cl. 545 (1958), *cert. denied*, 358 U.S. 832, 79 S.Ct. 55, 3 L.Ed.2d 70 (1958), and *Lehigh Portland Cement Co. v. United States*, 30 F.Supp. 217, 90 Ct.Cl. 36 (1939), in which the taxpayers were denied relief despite the fact that their assessments were made contrary to statute. The government cites dicta in *Bromberg* suggesting that the Ninth Circuit now considers itself to be consistent with *Lyddon & Co.* and *Lehigh*. *Bromberg*, 300 F.2d at 862–63.

However, even if the government were correct that the assessment here is merely voidable, it is not valid in the case at hand. *Lehigh* and *Lyddon & Co.* are readily distinguishable. In *Lehigh*, the government sent a deficiency notice and assessed and collected the deficiency before the statute of limitations expired. The only defect in

*Lehigh* was that the government made the assessment before what was then a 60–day grace period expired. *Lehigh*, 30 F.Supp. at 224, 234. In addition, the court emphasized that the plaintiff did not object to the illegal assessment when the defect was discovered. *Id.* at 223. In this case, *no* deficiency notice was sent to Parsons, the collection of the taxes took place *after* the limitations period had expired and Parsons objected to the assessment promptly.

*Lyddon & Co.* is also distinguishable. There the court held that an assessment issued without being preceded by a deficiency notice may not have been "a wholly valid assessment," but it was sufficient to toll the statute of limitations because it was based on tax returns filed by the taxpayer showing that it owed a deficiency. *Lyddon & Co.*, 158 F.Supp. at 955. The court stated:

> When one files a tax return showing taxes due, he has, presumably assessed himself and is content to become liable for the tax, and to pay it either when it is due according to the statute, or when he can get the money together. At any rate he shows no desire to resort to the Tax Court to contest the assessment.

*Id.* at 953. Because the taxpayer admitted that it owed the deficiency on the tax returns it filed, the court reasoned that the taxpayer evidenced no intent to contest the deficiency. As a result, the court held that the assessment was "not a complete nullity." *Id.* at 954.

There is no evidence here that Parsons ever admitted that it owed the deficiency and no evidence that it would not have disputed the deficiency on the merits before the Tax Court in 1975, had the government properly issued Parsons the 90–day deficiency notice.[6] The whole purpose of

---

discomfort, the Service to reexamine the procedures utilized in this case.

**6.** Although the government agreed that this motion is appropriate for summary judgment as there are no issues of material fact in dispute, it repeatedly interjects the assertion that Parsons "admitted" that it owed the deficiencies listed on the two conditional waiver forms and that Parsons had no intention of disputing those defi-

ciencies in Tax Court. The government points, as evidence of Parsons' intent, to ¶ 16 of the Facts, in which Parsons states that if the deficiency is not found to be illegally or erroneously assessed, it will not dispute the substantive and computational determination of the deficiency.

This statement of present intent not to litigate the substantive accuracy of the deficiency is wholly irrelevant to what Parsons might have

the restrictions on assessments and collections in § 6213(a) "is to give the taxpayer an opportunity to challenge in the Tax Court an alleged deficiency before he has to pay it." *DeWelles v. United States*, 378 F.2d 37, 38 (9th Cir.), *cert. denied*, 389 U.S. 996, 88 S.Ct. 501, 19 L.Ed.2d 494 (1967). Even if one adopts the reasoning in *Lyddon & Co.* that a taxpayer who admits that he owes the deficiency has no desire to contest it in Tax Court, one cannot apply the reasoning to Parsons, who made no such admission and did not receive a fair opportunity to litigate the merits of the deficiency in the Tax Court before it had to pay the tax.[7]

The Service makes a number of other arguments based on analogy to the law of contracts. All of these arguments are inapposite. The conditional Form 870–C Parsons signed was a waiver form; it was not a bilateral contract. *See Ventura Consol. Oil Fields*, 86 F.2d at 154 (distinguishing between a waiver form and a final closing agreement, which is a bilateral contract). Parsons has demonstrated that it made an overpayment under § 6401, which provides that an overpayment "includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto." Here, the IRS collected the deficiency, plus interest, after the July 1, 1975 limitations period expired. The IRS' act of crediting the overassessments for 1966, 1969 and 1971 against the deficiency assessed for 1970, after the limitations period for collecting a deficiency for 1970 had expired, was an overpayment, entitling Parsons to a refund of $571,914, plus statutory interest.[8] *See United States v. John Gallagher Co.*, 83 F.2d 368, 369 (6th Cir.1936).

Accordingly, Parsons' motion for summary judgment is granted and the Service's cross-motion for summary judgment is denied. Judgment shall be entered in accordance herewith.

---

done in 1975, had the government properly sent Parsons a deficiency notice before the assessment. Thus, although the government has interjected a potential factual dispute, that dispute does not involve a material issue that would require denial of summary judgment.

7. *Philadelphia & Reading Corp.*, 676 F.2d 1159, is distinguishable from the case at hand on the same basis. In that case, the taxpayer's inside tax counsel testified that he had conditionally

agreed to the deficiency at the conclusion of the IRS examination and that it was the taxpayer's intent at that time to pay the deficiency plus interest. *Id.* at 1161.

8. Although the amount of the overassessments listed on the two 870–C forms total only $539,810, the parties agree that the balance of the $571,914 deficiency was satisfied by the Service's crediting other overpayments by Parsons against the deficiency.