**PHILADELPHIA & READING CORPORATION,**
Appellant,

v.

**UNITED STATES of America, Appellee.**

No. 90–3520.

United States Court of Appeals,
Third Circuit.

Argued Jan. 22, 1991.

Decided Sept. 4, 1991.

Edward B. Maxwell, II, Young, Conaway, Stargatt & Taylor, Wilmington, Del., and Frederic L. Hahn, Glen H. Kanwit (argued), David B. Goroff, Hopkins & Sutter, Chicago, Ill., for appellant.

Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, John A. Dudeck, Jr., David English Carmack, Teresa T. Milton, Ernest J. Brown (argued), U.S. Dept. of Justice, Tax Div., Washington, D.C., and William C. Carpenter, Jr., U.S. Atty., Wilmington, Del., for appellee.

Before BECKER and HUTCHINSON, Circuit Judges, and SMITH, District Judge *

## OPINION OF THE COURT ·

HUTCHINSON, Circuit Judge.

Philadelphia & Reading Corporation (taxpayer) appeals from a final order of the United States District Court for the District of Delaware granting summary judgment in favor of the United States (government) in the taxpayer's action for a tax refund totalling more than $10,000,000.00. The claimed refund is for taxes paid under assessments [1] that both the taxpayer and

---

* Hon. D. Brooks Smith, District Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

1. The Internal Revenue Code states: "The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C.A. § 6203 (West 1989). As the Supreme Court has stated: "The assessment, essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." *Laing v. United States,* 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 479 n. 13, 46 L.Ed.2d 416 (1976). Nevertheless, it is the assessment, and only the assessment, that sets in motion the collection powers of the IRS, powers that include the seizure of assets, the freezing of bank accounts and the creation of liens, all without judicial process. *See* 26 U.S.C.A. §§ 6321, 6322, 6331 (West 1989 & Supp.1991).

the government recognize were illegal. However, the district court accepted the government's argument that equitable considerations required the rejection of the taxpayer's refund claim.

The court held it would be inequitable to grant the taxpayer's refund claim for three reasons. First, the statute of limitations on assessment of taxes against the taxpayer had run on all the taxable years in question. Second, the record showed that the taxpayer would not have contested the government's computations showing it owed net tax deficiencies of about $4,060,000.00 for the years in question. Third, the record also showed that the taxpayer would have eventually been willing to pay that net amount if the government had not mistakenly assessed taxes totaling approximately $10,000,000.00, excluding interest, without mailing the taxpayer the mandatory pre-assessment notice of deficiency. See 26 U.S.C.A. § 6213(a) (West Supp. 1991). The amount assessed represented the sum of the amounts the record shows the taxpayer was prepared to concede was due for years in which it had underpaid its taxes, but did not include any credit for taxes paid in years for which the government was prepared to concede overpayments totaling about $6,000,000.00.

When the illegal assessments were made, formal recognition of the credit had been forestalled by ongoing proceedings for approval of the overpayments before Congress's Joint Committee on Taxation in accord with 26 U.S.C.A. § 6405(a) (West 1989). The taxpayer had, at that time, agreed to extend the statute of limitations on assessment but, as the record also shows, was unwilling to waive unconditionally the required notice of deficiency and the restrictions on assessment and collection. See id. § 6213(a). The restrictions include a stay of collection for ninety days and give a taxpayer unable or unwilling to pay the Internal Revenue Service's (IRS's) claims at once a chance to seek relief in the United States Tax Court.

Though Congress's approval of the credits taxpayer wanted was obtained shortly before the agreed extension of the statute of limitations on assessment expired, the IRS nevertheless attempted to collect the full amount of the illegal assessments without credit for the overpayments in other years that the parties recognized the taxpayer had made.

Had assessments been properly made for the years in which deficiencies existed and credits been properly allowed for years in which there were overpayments, IRS would have been entitled to about $4,000,000.00 from the taxpayer. The IRS's attempt to collect the full amount failed because the taxpayer obtained judicial relief that precluded the IRS from collecting more than the net taxes due after allowance of the agreed credits for the taxpayer's overpayments. Thus, the IRS succeeded in forcing payment of the net due, about $4,000,000.00. The IRS is now threatened with the loss of that amount and the additional $6,000,000.00 or so that the taxpayer had overpaid in other years but would have let the government keep as a credit against the $10,000,000.00 or so the taxpayer was willing to concede it owed for the years in which it had underpaid.

For the reasons set forth below, we hold that the district court erred in entering summary judgment in favor of the government and in denying the taxpayer's cross-motion for summary judgment. As we shall explain, the applicable statutory and case law does not permit us to rely upon the sort of equitable considerations that were essential to the government's victory in the district court. Thus, we are left with the fact that the taxpayer paid over $10,000,000.00 as the result of illegal assessments. We will therefore reverse the entry of summary judgment in favor of the government and remand this matter to the district court with directions to grant the taxpayer's cross-motion and enter summary judgment in the taxpayer's favor.

## I.

In the years 1970–72, the Internal Revenue Service audited the taxpayer's returns for the years 1964 through 1967 and for the first four and one-half months of 1968. For the calendar year 1964, the IRS calcu-

lated that the taxpayer had overpaid its taxes in the amount of $231,991.00. For the calendar year 1965, the IRS calculated that the taxpayer had underpaid its taxes in the amount of $19,485.00. For the calendar year 1966, the IRS calculated that the taxpayer had underpaid its taxes in the amount of $9,336,231.00. For the calendar year 1967, the IRS calculated that the taxpayer had overpaid its taxes in the amount of $6,237,660.00.[2] Finally, for the first four and one-half months of 1968, the IRS calculated that the taxpayer had underpaid its taxes in the amount of $1,174,119.00. Thus, the taxpayer owed the government $10,529,835.00 as the result of underpayments, and the government owed the taxpayer $6,469,651.00 as the result of overpayments.

The taxpayer's net deficiency[3] over these years was $4,060,184.00. Under the relevant tax laws, however, the IRS is not empowered to arrive at a net deficiency or overpayment and send the taxpayer a bill or refund for the net amount. Instead, the IRS must separately assess each year's deficiency and separately refund each year's overpayment. However, there is an exception to this rule: the taxpayer and the IRS can reach an agreement that permits the IRS to pay out or recover only the net overpayment or deficiency.

In the absence of such an agreement, federal law requires the IRS to mail the taxpayer a notice of deficiency for each year's underpayment. *See* 26 U.S.C.A. § 6213(a). Section 6213(a) also provides the taxpayer with a ninety-day period following mailing of the notice within which to seek a redetermination of the deficiency in Tax Court. Until expiration of the ninety-day period or the conclusion of any judicial proceedings, whichever is later, § 6213(a) prevents the IRS from assessing

or collecting any tax due. *See Holof v. Commissioner*, 872 F.2d 50, 53 (3d Cir. 1989); *Flynn v. United States ex rel. Eggers*, 786 F.2d 586, 589 (3d Cir.1986).

Furthermore, in the absence of such an agreement, the taxpayer would be entitled to full refunds with respect to the amounts it overpaid in 1964 and 1967. At the time relevant to this suit, however, the statute required IRS to submit for approval to Congress's Joint Committee on Taxation, *see* 26 U.S.C.A. §§ 8001–8005 (West 1989), any proposed refunds in excess of $100,-000.00. *See id.* § 6405(a) note (West 1989).[4] If the Committee takes no timely action to bar the refund, the IRS can schedule the overpayments as overassessments and then pay or credit the taxpayer with a refund. *See id.* §§ 6405, 6407 (West 1989).

The taxpayer in the appeal now before us sought to enter into an agreement with the IRS that would permit the taxpayer's overpayments in 1964 and 1967 to be applied against the amount it still owed to the government for the years 1965 and 1966 and for the first part of 1968. On December 13, 1972, the taxpayer executed a modified version of IRS Form 870. Form 870, in its usual printed form, is entitled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment." *See* Appendix (App.) at 881. At the top of the Form 870 that the taxpayer executed, the following standard pre-printed message was prominently displayed:

Pursuant to section 6213(a) of the Internal Revenue Code of 1954 or corresponding provisions of prior internal revenue laws, the restrictions provided in section 6213(a) or corresponding provisions of prior internal revenue laws are hereby waived and consent is given to the assessments and collection of the fol-

---

**2.** The government explains in its brief that the taxpayer's large underpayment in 1966 and its large overpayment in 1967 resulted from a loss the taxpayer claimed in 1966. The IRS disallowed the loss in 1966 but allowed most of the loss in 1967. Brief for Appellee at 4.

**3.** The Internal Revenue Code defines "deficiency" as the amount of tax required to be paid under the governing law minus the sum of the

tax shown on the taxpayer's return, the amounts previously assessed and rebates owed to the taxpayer. *See* 26 U.S.C.A. § 6211(a) (West 1989).

**4.** Currently, the IRS must only submit to the Joint Committee on Taxation proposed refunds that exceed $1,000,000.00. *See* 26 U.S.C.A. § 6405(a) (West Supp.1991).

lowing deficiencies, together with interest on the tax as provided by law; and the following overassessments are accepted as correct: ....

*Id.*

The standard printed text merely explains that execution of Form 870 waives the taxpayer's right to receive the statutorily required notice of deficiency for each underpayment and the taxpayer's right to seek redetermination of the amount of the deficiencies asserted in the Tax Court. Instead, a properly executed Form 870 permits the IRS to assess and collect tax due without sending the taxpayer a notice of deficiency. *See* 26 U.S.C.A. § 6213(d) (West Supp.1991). Thus, a taxpayer who signs the standard Form 870 must be prepared to pay the balance due the IRS on demand or suffer the exigencies of the collection process.

Upon the Form 870 that this taxpayer signed, it added a condition to its waiver of the ninety-day notice that section 6213(a) requires before the IRS may assess or collect any deficiency. The condition stated:

> This document shall be effective as a waiver of restrictions on assessment and collection with respect to taxable years ending December 31, 1965 and December 31, 1966 and the taxable period ending April 18, 1968, on the date the schedule of overassessments with respect to the taxable years ending December 31, 1964 and December 31, 1967 is signed by an authorized representative of the Internal Revenue Service.

App. at 881. The parties agree that the IRS assessed the taxes at issue in this refund action against the taxpayer before fulfilling the express condition that the Form 870 qualified waiver contained and without giving the statutorily required notice.

In its brief, the government explains that IRS Form 870 confers a benefit upon a taxpayer that does not wish to petition the Tax Court for redetermination of any deficiencies owed. A taxpayer that seeks review in the Tax Court faces the possibility of owing interest on the full amount of any deficiency the Tax Court finds due; how-

ever, a taxpayer that forgoes review in Tax Court can, by executing a binding Form 870, suspend interest on tax due from the thirtieth day following the filing of the waiver through the time that the IRS issues a notice and demand for payment. *See* 26 U.S.C.A. § 6601(a), (c) (West Supp. 1991). As noted, execution of a binding Form 870 can have negative consequences as well, since the waiver permits the IRS to demand that the taxpayer immediately pay the deficiencies listed upon the form. The government and the taxpayer agree, however, that execution of Form 870 does not waive the taxpayer's right to seek a refund in district court or in the United States Claims Court following payment of the amount listed on Form 870. The form itself says as much.

While execution of a non-conditional Form 870 would permit the IRS to require immediate payment of deficiencies, the timetable upon which the taxpayer could expect to receive refunds for the years 1964 and 1967 was uncertain. Before a refund request could come before Congress's Joint Committee on Taxation, IRS field personnel were required to draft a report. Then, the IRS's national office would review the report before sending it to the Joint Committee. Thereafter, the Joint Committee, under section 6405(a), has thirty days to review the proposed refund. If the Joint Committee does not reject the refund within the thirty-day period, the IRS must then process the refund.

The condition that the taxpayer included in its Form 870 waiver was meant to require the IRS to wait until the overpayments were available before assessing the deficiencies. The taxpayer did not wish to pay "out of pocket" anything more than the net deficiency it owed to the IRS. In exchange for that offer, the taxpayer offered to waive its right to litigate the amounts of the deficiencies in Tax Court.

In January of 1973, the IRS sent information relevant to the taxpayer's overpayments to the Joint Committee. At the same time, other wheels within the IRS began to churn. The IRS's Chicago District Office, which had conducted the audit

of the taxpayer's accounts that resulted in the deficiencies and overpayments contained on the modified Form 870, forwarded information concerning the tax deficiencies it asserted to the IRS's Kansas City Service Center, which processes returns.

An IRS employee by the name of Ida Ballard (Ballard) was assigned to the taxpayer's particular file at the Kansas City Service Center. Operating under IRS internal procedures that require the immediate assessment of deficiencies in excess of $50,000.00, Ballard initiated assessment procedures in February of 1973. Gerald Nordstrom (Nordstrom), the taxpayer's tax attorney, contacted Ballard following the taxpayer's receipt of the assessments that, with interest, totaled more than $13,000,-000.00. Nordstrom informed Ballard that he had signed a qualified Form 870 waiver but that the form's condition had yet to be met. Upon learning that the taxpayer anticipated refunds and wished to apply those refunds against its deficiencies, Ballard abated the assessments. Ballard was aware following her first conversation with Nordstrom that the extended statute of limitations applicable to the assessments against the taxpayer would not expire until June 30, 1973.[5]

By early June of 1973, the Joint Committee had yet to complete its review of the taxpayer's refund. As a result, the IRS asked for a further extension of the statute of limitations until September 30, 1973. The taxpayer agreed. The IRS never informed Ballard of the extension. On June 19, 1973, the Joint Committee indicated that it had no objection to the taxpayer's refund. Ballard was not informed of the Committee's approval. Still, three days later, on June 22, 1973, Ballard once again made the entry that constituted assessments against the taxpayer and mailed tax bills demanding payment of the full deficiencies plus interest, totalling over $13,-

000,000.00, without accompanying credit for the overpayments relating to other taxable years. The tax bills arrived at the taxpayer's offices on June 25, 1973. Nordstrom was then on vacation, but when he returned on June 28 he called Ballard and informed her that the conditions contained on the Form 870 had not yet been satisfied and thus the assessments were premature. He also informed her that the statute of limitations had been extended until the end of September, 1973. Also on June 28, Nordstrom received a letter that the Joint Committee allowed the taxpayer's refunds.

This time, Ballard failed to abate the assessments she made on June 22, 1973. Neither party disputes that when Ballard made these assessments the condition contained on the qualified Form 870 had yet to be met: the taxpayer's overassessments had yet to be scheduled. In fact, schedules of the taxpayer's 1967 overassessments were not signed until August of 1973, while schedules of the taxpayer's 1964 overassessments were not signed until October of 1973. On September 30, 1973, the extended statute of limitations for assessments related to the taxpayer's 1965, 1966 and 1968 taxable periods expired. Neither party disputes that the assessments Ballard made on June 22, 1973 were not preceded by the notices of deficiency that are required under federal law unless the taxpayer has waived the notice. Because the express condition contained on the taxpayer's Form 870 had not occurred, the taxpayer had not waived the notices of deficiency it was entitled to under federal law when Ballard assessed these deficiencies against it.

Based upon the June 22, 1973 assessments, the IRS initiated collection proceedings against the taxpayer in late November of 1973. An IRS agent visited the taxpayer in December of 1973 and demanded immediate payment on the tax bills that he

---

**5.** Under the Internal Revenue Code, "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)." 26 U.S.C.A. § 6501(a) (West Supp.1991). Nevertheless, the IRS and the taxpayer can consent in writing before expiration of the statute of limitations to its extension. *Id.* § 6501(c)(4) (West Supp. 1991). At the time Ballard first received the taxpayer's file, the applicable statute of limitations had been extended under section 6501(c)(4) to June 30, 1973.

presented. Instead of paying the bills, the taxpayer filed suit in the United States District Court for the Northern District of Illinois seeking to enjoin the IRS from collecting or otherwise recovering the $10,529,835.00 in deficiencies that had been illegally assessed against the taxpayer.

Both the taxpayer and the IRS moved for summary judgment. The Illinois district court issued a split decision; it seemed to agree with the taxpayer that the June 22, 1973 assessments were illegal; however, it held that the IRS could collect the amount of the net deficiency, $4,060,184.00, because the taxpayer had failed to demonstrate irreparable harm and so did not meet the requirements for injunctive relief.

The IRS and the taxpayer took separate appeals to the United States Court of Appeals for the Seventh Circuit. It affirmed in a published opinion. *See Philadelphia & Reading Corp. v. Beck*, 676 F.2d 1159 (7th Cir.1982). The court of appeals ruled that the June 22, 1973 assessments were illegal. *Id.* at 1164. However, the court agreed with the district court that in order to qualify for injunctive relief the taxpayer had to show not only a likelihood of success on the merits but also irreparable harm. *See id.* at 1163–64. The court wrote:

> The taxpayer here has shown that equity supports an injunction with respect to the illegal $14,000,000 June 22nd deficiency. However, it has made no such showing with respect to the $4,060,184 net deficiency which resulted from the 1972 audit and which the taxpayer had agreed to pay.

*Id.* Following the Seventh Circuit's decision, the IRS exercised its collection powers and levied upon taxpayer's property in early 1983 in order to collect the net deficiency.

On April 6, 1983, the taxpayer filed an administrative claim with the IRS seeking a refund of the full $10,510,350.00 that had been illegally assessed. This claim was the sum of the net deficiency of $4,060,184.00 and the overpayments that reduced the total deficiency to the net amount. The IRS disallowed the claim on November 8, 1983. On November 22, 1983, the taxpayer filed

this suit in the United States District Court for the District of Delaware. In its original complaint, the taxpayer sought a refund of only the $4,060,184.00 plus interest and penalties that the IRS collected from it. In early July of 1985, the district court granted the parties' joint motion to dismiss with leave to reinstate the action to permit the parties to resolve issues related to interest and penalty. On March 28, 1989, the taxpayer filed an amended complaint seeking a refund of the entire $10,529,835.00 that was illegally assessed on June 22, 1973, the amount of interest collected on that sum and interest on all of those sums owed. At the time of the Delaware district court's opinion, this sum exceeded $30,000,000.00.

After the taxpayer filed its amended complaint, both parties moved for summary judgment. In a published opinion and order entered May 31, 1990, the district court granted the government's motion for summary judgment and denied the taxpayer's cross-motion. *See Philadelphia & Reading Corp. v. United States*, 738 F.Supp. 143 (D.Del.1990). The district court recognized that the June 22, 1973 assessments against the taxpayer were illegal. Nevertheless, the district court held that the taxpayer was not entitled to a refund. The district court wrote:

> P & R has reaped the benefits of the qualified Form 870 by having the overpayments credited against the deficiencies; its expectations were fulfilled. The record shows that P & R had no intention of challenging the IRS's position in the Tax Court.... Consequently, it is appropriate to consider the contentions that P & R experienced no material prejudice from the IRS' action and P & R obtained the substantive results from the qualified Form 870 that it had expected. Because it enjoyed the benefit of its bargain, P & R is not entitled to a refund of any amount of the tax deficiencies.

*Id.* at 149.

The taxpayer filed this timely appeal. In it, the taxpayer contends that the district court should have ended judicial inquiry when it recognized that the assessments

were illegal because the IRS failed to give the statutorily required notices of deficiencies. The taxpayer maintains that the district court erred in even examining whether equitable considerations favored the taxpayer or the IRS. Alternately, the taxpayer argues that if the district court properly considered equitable factors, it erred in deciding for IRS since the equities on balance favored the taxpayer, not the IRS.

## II.

The district court exercised subject matter jurisdiction over this case pursuant to 28 U.S.C.A. § 1346(a)(1) (West Supp.1991). Section 1346(a)(1) grants jurisdiction to district courts over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." We have appellate jurisdiction over the district court's final order granting summary judgment in favor of the government and denying taxpayer's cross-motion for summary judgment pursuant to 28 U.S.C.A. § 1291 (West Supp.1991).

Since this appeal is taken from a final order granting summary judgment, our scope of review is plenary. *See International Union, UMWA v. Racho Trucking Co.*, 897 F.2d 1248, 1252 (3d Cir.1990). Thus, "[w]e apply the test provided in Federal Rule of Civil Procedure 56(c): (1) is there no genuine issue of material fact and (2) is one party entitled to judgment as a matter of law?" *Id.* The parties correctly agree that no genuine issue of material fact remains to be resolved. Thus, the sole issue presented on appeal is which party is entitled to judgment as a matter of law.

## III.

The taxpayer's argument on appeal is not complicated. It contends that its submission to the IRS of the qualified Form 870 presented the IRS with two options. Under the first option, the IRS could have satisfied the condition contained in the form and not assessed the deficiencies until an authorized representative of the IRS signed the schedule of overassessments that the Joint Committee had approved.

Under the second option, the IRS could have chosen not to accept the condition contained in the form and instead sent the taxpayer the notices of deficiency that the law required in the absence of an effective waiver as a condition precedent to assessment.

The taxpayer maintains that the IRS instead violated the law when it assessed the taxes that are the subject of this appeal without first sending the taxpayer the required statutory notices of deficiency. The taxpayer reminds us that it did not effectively waive its right to receive these notices because the IRS failed to satisfy the express condition contained in taxpayer's qualified Form 870. Thus, according to the taxpayer, the IRS failed to make a legal assessment before the statute of limitations applicable to these deficiencies expired. As a result, the taxpayer contends that it is entitled to a refund of the entire amount of the illegal assessments.

The taxpayer's position is not without support. In *Robinson v. United States*, 920 F.2d 1157, 1161–62 (3d Cir.1990), we wrote:

Congress has created an elaborate system for the collection and dispute of tax matters. Adherence to these procedures is required by both citizens and the IRS alike. As one commentator remarked, "The procedural provisions of the Code appear to be the creation of a scholastic, but whimsical, mind. In general, however, the courts take them literally: the game must be played according to the rules." Johnson, *An Inquiry into the Assessment Process*, 35 Tax L.Rev. 285, 286 (1980).

Years earlier, this Court wrote in *Richardson v. Smith*, 301 F.2d 305, 306 (3d Cir.) (per curiam), *cert. denied*, 371 U.S. 820, 83 S.Ct. 36, 9 L.Ed.2d 60 (1962): "[W]e and other courts have pointed out in many instances that taxation is a game which must be played strictly in accordance with the rules."

Reported decisions from the United States Courts of Appeals for the Fifth, Seventh and Ninth Circuits provide specific persuasive support for the arguments the

taxpayer raises on appeal. In *Steiner v. Nelson*, 259 F.2d 853 (7th Cir.1958), taxpayer Steiner executed Form 870 with the express condition that "This waiver of restrictions is subject to acceptance by the Commissioner on the basis of the settlement hereinbefore proposed and if not accepted, it will be of no force or effect." *Id.* at 856. Similar to the case now before us, in *Steiner* the IRS did not satisfy the condition set forth on the Form 870; instead, the IRS assessed taxes and sought to collect them without first providing Steiner with the notice of deficiency that is a statutory condition precedent to assessment in the absence of a valid waiver. *Id.* at 854–55. Steiner sought an injunction in district court to prevent the IRS from collecting the taxes, and the district court granted his motion for summary judgment. On appeal, the court of appeals affirmed the district court's injunction in Steiner's favor. *Id.; see also United States v. Yellow Cab Co.*, 90 F.2d 699 (7th Cir.1937) (holding illegal IRS's assessment and collection of taxes while taxpayer was seeking review of deficiencies in Tax Court).

In *Maxwell v. Campbell*, 205 F.2d 461 (5th Cir.1953), taxpayer Maxwell sought an injunction that would bar the IRS from collecting assessments that were made without the required notice of deficiency. *Id.* at 462. The district court denied Maxwell's request for an injunction. The court of appeals reversed, writing that "[t]he commissioner is as bound as the taxpayer by [the] terms [of the Internal Revenue Code.]" *Id.* at 463.

Finally, in *Ventura Consol. Oil Fields v. Rogan*, 86 F.2d 149 (9th Cir.1936), *cert. denied*, 300 U.S. 672, 57 S.Ct. 610, 81 L.Ed. 878 (1937), taxpayer Ventura Consolidated Oil Fields (Ventura) brought an action to enjoin the IRS from collecting deficiencies that the IRS assessed during a period in which assessment was prohibited. In *Ventura*, the IRS sent the taxpayer a letter expressing the substance of a tentative settlement that the company and the IRS had reached concerning Ventura's tax liability. *See id.* at 152. Ventura signed a form that the IRS had enclosed with the letter and returned it to the IRS. However, the IRS did not sign the form or execute it as was required under the relevant federal statute. *See id.* The IRS then proceeded to assess the deficiencies stated in the letter against Ventura.

In its suit to enjoin collection of the assessments, Ventura advanced a number of arguments, three of which are relevant here. First, it contended that the letter the IRS sent did not constitute the required notice of deficiency. *See id.* at 151. Second, Ventura contended that even if the letter did constitute the required notice of deficiency, the IRS assessed the tax in the period following the letter during which assessment is suspended so that the taxpayer may decide whether to litigate the deficiency in Tax Court. *See id.* Last, Ventura contended that the form it signed and mailed to the IRS did not serve to waive Ventura's right to receive a notice of deficiency because the IRS never properly accepted the form. *See id.* at 152.

The district court refused to issue the injunction and ruled in favor of the IRS. *See id.* at 153. On appeal, the court of appeals reversed. The court of appeals held that the letter did not constitute the required notice of deficiency. *See id.* at 154. The court also held that the form Ventura signed did not waive its right to receive a notice of deficiency before the IRS could assess the taxes at issue. *See id.* The court wrote: "The Commissioner may not take that portion of the proposed compromise which suits him and reject the rest. If a taxpayer's waiver of restrictions [upon assessment] is given upon a condition, the Commissioner may not take advantage of the waiver without complying with the condition." *Id.* (citation omitted). While the IRS argued that equitable principles, in light of the large sums at stake, required that the district court's order be affirmed, the court wrote: "We are unable to discover any differences in the applications of the rules of law or equity in tax cases, whether the government's claim be for $100 or $10,000,000." *Id.* at 156.[6]

---

6. In the appeal pending before us, the taxpayer     argues that the unreported decision of the Unit-

The taxpayer's position is also supported by statutory authority. The statutory provision that requires the IRS to send a taxpayer a notice of deficiency before assessing taxes, except when a taxpayer validly waives its right to such notice, contains four express exceptions. *See* 26 U.S.C.A. § 6213(a), (b), (d) (West Supp.1991). Those four exceptions are:

(1) Assessments arising out of mathematical or clerical errors....

(2) Abatement of assessment of mathematical or clerical errors....

(3) Assessments arising out of tentative carryback or refund adjustments....

(4) Assessment of amount paid....

*Id.* § 6213(b). None of these four exceptions applies here. The IRS does not contend that it was entitled to keep the more than $6,000,000.00 in refunds due the taxpayer for tax years 1964 and 1967 because those taxes were "already paid" under § 6213(b)(4). Instead, the IRS apparently recognized that § 6213(b)(4) applies to taxes already paid for the same year as the assessments that follow. *See* 1 G. Donoghue, Jr. & J. Doheny, *Casey Federal Tax Practice* § 6.11 (1982).

■ An assessment of taxes that is not preceded by the statutorily required notice of deficiency or a validly executed and accepted waiver of notice of deficiency is illegal, and we so hold. In doing so, we are in accord with the Illinois district court that decided the taxpayer's earlier injunction action, *see Philadelphia & Reading Corp. v. Beck,* No. 73–C–3134 1980 WL 1734 (N.D.Ill. Aug. 29, 1980), the Seventh Circuit, which heard the injunction action on appeal, *see Beck,* 676 F.2d at 1163, and the Delaware district court, which ruled on the refund case now on appeal to us, *see Phila-*

*delphia & Reading Corp. v. United States,* 738 F.Supp. at 149 n. 22.

■ We also agree with those courts that the qualified Form 870 that the taxpayer executed did not serve to waive its right to receive notices of deficiency. The waiver contained the express condition that before the IRS could assess any deficiencies the Joint Committee had to approve and the IRS had to sign the taxpayer's schedule of overassessments. Instead, the IRS assessed the taxes before signing the schedule. This was improper. As the Ninth Circuit noted in *Ventura,* "[t]he Commissioner may not take that portion of the proposed compromise which suits him and reject the rest. If a taxpayer's waiver of restrictions [upon assessment] is given upon a condition, the Commissioner may not take advantage of the waiver without complying with the condition." 86 F.2d at 154.

■ The dissent's conclusion that IRS's failure to abide by the condition on waiver is unimportant because "once the overassessments were scheduled [there is] nothing in [the condition's] language that attaches any import to when the assessment was made, or, more particularly, whether the assessment preceded the scheduling of the overassessments" ignores the nature of a condition. Dissent, at 1078 (emphasis omitted). The IRS's failure to meet a condition precedent to a taxpayer's agreement to waive the statutory procedures limiting the right to assess prevent an agreement to waive from ever becoming effective. Accordingly, in this case, there was never any agreement on whose substantial performance could save the IRS from the effect of failure to perform the statutory preliminaries to assessment. Substantial performance or the absence of identifiable prejudice from non-performance does not retroactively cure the illegality of these

ed States Court of Appeals for the Ninth Circuit in *Parsons Corp. v. United States,* 835 F.2d 1435 (9th Cir.1987) (table), requires that we reverse the order of the district court and remand with directions that judgment be entered in favor of the taxpayer.

The Court of Appeals for the Ninth Circuit, like this Court, does not permit citation to its

unreported decisions except where they are "relevant under the doctrines of the law of the case, *res judicata* or collateral estoppel." United States Court of Appeals for the Ninth Circuit Rule 36–3; *see* United States Court of Appeals for the Third Circuit Internal Operating Procedure 5.6. For this reason, we do not rely upon *Parsons Corp.* in deciding this appeal.

assessments. As the dissent recognizes, an assessment that precedes a notice of deficiency is "forever void and illegal." *Id.* Whether a later assessment after the condition on a taxpayer's waiver of the statutory collection process was substantially met is not before us. Here, no assessments were ever made after the overassessments were scheduled; and, if any had been made, they would have been barred by the statute of limitations.

■ Since the applicable statute of limitations on assessment has long since expired, it is also apparent that it is now too late to make valid assessments. As a result, the IRS cannot reassess these taxes even though the record shows the taxpayer was willing to concede they were due. Thus, the Illinois district court, the Seventh Circuit and the Delaware district court, while also concluding the assessments were illegal, refused to enjoin collection of the net amount due or order refunds of the taxes illegally paid and assessed. Instead, all three courts examined the equities and ruled in favor of the IRS.

■ As we have already noted, examination of the equities is necessary and appropriate in a taxpayer's action to enjoin illegally assessed taxes. *See Flynn*, 786 F.2d at 590. The Illinois district court and the Seventh Circuit were correct in examining the equities when deciding whether to grant the injunction the taxpayer requested. We hold, however, that the Delaware district court erred in entering summary judgment in favor of the government based upon equitable considerations. In a tax refund action based upon an admittedly illegal assessment, the Internal Revenue Code does not permit a court to balance the equities and determine the amount fairly due from a taxpayer by netting out his liabilities and payments over different taxable years.

■ We have set forth above the four specific exceptions to the requirement that a taxpayer receive a notice of deficiency before the IRS can assess or collect taxes that Congress has enacted. *See* 26 U.S.C.A. § 6213(b). None of the four exceptions permits consideration of the equities. In cases involving statutory construction of enumerated exceptions by Congress to a statutory scheme, the Supreme Court often applies the Latin maxim *expressio unius est exclusio alterius*. It has explained that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent." *United States v. Smith*, —— U.S. ——, 111 S.Ct. 1180, 1185, 113 L.Ed.2d 134 (1991) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910–11, 64 L.Ed.2d 548 (1980)); *see Continental Cas. Co. v. United States*, 314 U.S. 527, 533, 62 S.Ct. 393, 86 L.Ed. 426 (1942).[7] The IRS has failed to suggest any contrary legislative intent here. Indeed, we think the maxim has special force when the statutory scheme is complex, its parts are closely related and, in making important decisions, the persons affected by it depend heavily on the even-handed application of the statute's plain terms. In this case, the district court should not have considered the equities and, based upon them, ruled in favor of the government.

Moreover, even if the equities could be considered, we are not sure that they would preponderate in favor of the government. It is true that the taxpayer was willing to forego its right to challenge the deficiencies in Tax Court in exchange for paying only the net instead of the total deficiency. Since this is the result that the taxpayer received, the government contended and the district court agreed that the taxpayer received the benefit of the bargain that it sought. However, it is also true that the taxpayer took every step to inform the IRS that the June 22, 1973 assessments were illegal and that the IRS

---

**7.** The foremost authority on statutory construction explains the doctrine in the following manner:

> Where there is an express exception, it comprises the only limitation on the operation of the statute and no other exceptions will be implied. An enumeration of exceptions from the operation of a statute indicates that [the statute] should apply to all cases not specifically enumerated.

2A N. Singer, Sutherland Statutory Construction § 47.11 (4th ed. 1984) (footnotes omitted).

had the option of properly accepting the qualified Form 870 or providing the required notices of deficiency before the statute of limitations ran. Instead, the IRS did nothing. So, when the statute of limitations ran, the IRS was left trying to collect illegal assessments and, in doing so without allowing the credits agreed upon, tried to collect the gross amount. Thus, in making its present plea for equity, it ignores its own earlier failure to do equity until required by judicial authority. It is unnecessary, however, for us to decide whether the district court erred in balancing the equities. It did not sit to decide the taxpayer's legal claim for refund as a court of equity. Rather, its duty was to decide whether the taxes at issue were illegally collected or retained.

In the Tax Law Review article that this Court quoted in *Robinson,* 920 F.2d at 1161, the author writes:

It would appear that the entire requirement for an assessment is unnecessary. It is, after all, nothing other than the entry of names and amounts by clerks of the Service deep in the bowels of Internal Revenue buildings. It bears no particular relationship to anything, and there is little doubt that the Code could have been structured without it. Yet it exists. And if the Service may collect an improperly assessed tax in one case, on the grounds that no one was really harmed, there is no reason why it should not be able to collect from everyone against whom an improper assessment is made, or to simply stop making assessments on the grounds that to make them is senseless. It would seem, then, that prejudice or the lack of it is not a proper

test in an elaborate and minutely crafted procedural scheme. Rather, the rules are to be followed, and we are back where we started: a rule is a rule is a rule.

Johnson, 35 Tax L.Rev. at 288.[8] We are, however, constrained to add that the rule requiring assessments, arcane as it may be, has real consequences. If it is followed, the government can take from citizens whatever part or all of their worldly goods that are needed to satisfy the claim the government asserts under its power to tax and do so without judicial intervention. If those goods can also be taken though the government does not follow the rule on assessment, its power over the property of its citizens is unbounded unless the judiciary acts to restrain it. The precision and complexity of our tax laws with respect to assessment, levy and collection, together with cases too numerous to mention, bespeak Congress's intent to keep the Article III judiciary out of the administration of the tax code except to enforce and monitor the precise rules Congress has written to control the powers of the tax collector and protect the public fisc.[9]

In cases where a statute of limitations has run, but Congress has made it clear that equitable considerations do not permit a court to avoid its strict application, the result can often seem harsh. *See, e.g., Shendock v. Director, OWCP,* 893 F.2d 1458 (3d Cir.1989) (in banc) (statute of limitations for seeking review of black lung Benefits Review Board cases is jurisdictional and thus equitable factors cannot be considered), *cert. denied,* —— U.S. ——, 111 S.Ct. 81, 112 L.Ed.2d 53 (1990). In the realm of taxation, the effect of harsh pro-

---

**8.** In a footnote to this discussion, the author sets forth Johnson's Maxims:

    (1) The rigidity with which a rule must be followed is in inverse proportion to the sense it makes.

    (2) A rule vanishes when the reason for it vanishes; if there never was any reason for a rule, the reason cannot vanish and the rule, therefore, is incapable of vanishing.

Johnson, at 288 n. 17. Seemingly flippant, this statement is strangely true. The need to abide by the rules is strongest when the rules are all we have.

**9.** The following cases illustrate the limited power of the judiciary to review the equity of actions by the IRS: *Commissioner v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976) (injunction action in response to jeopardy assessment completely foreclosed by Anti–Injunction Act when procedures for jeopardy assessment are followed unless it is manifest that the government cannot prevail and irreparable harm is shown); *Westgate–California Corp. v. United States,* 496 F.2d 839 (9th Cir.1974) (same).

cedural rules falls equally upon the taxpayers and the government. As the author of the Tax Law Review article explains:

[A] Tax Court petition filed 91 days after the mailing of a notice of deficiency is absolutely invalid, and the taxpayer must pay the tax (though he may, if he chooses, later sue for a refund). A claim for refund filed one day after the last day for filing is absolutely invalid and the Service will not allow a refund, nor will any court have jurisdiction over a refund suit. Under these circumstances, the taxpayer is forever barred from receiving a refund of the tax. The requirement of section 6212 that a notice of deficiency must be sent to the taxpayer's "last known address" means just that: if so sent it is valid even though the taxpayer never received it, but if not so sent it is invalid even if the taxpayer did receive it.

Johnson, 35 Tax L.Rev. at 286 (footnotes omitted).

If our holding in this case seems to enforce the Internal Revenue Code's procedural provisions so strictly as to work an inequity upon the government, there exist many other cases in which strict enforcement of the Internal Revenue Code's complex rules on the determination, assessment, levy and collection of taxes worked to the detriment of a taxpayer and the benefit of the government. As the Illinois district court wrote in its opinion, here the government "[s]eek[s] equity for itself— although [it] scarcely ever extend[s] it to taxpayers." App. at 1039.

The government's reliance upon dicta in the Seventh Circuit's opinion that accompanied the mandate affirming the Illinois district court's denial of the taxpayer's motion for an injunction against any assessments does not persuade us otherwise. There, the court of appeals wrote that it would be "unjust" for the taxpayer to recover the full amount of the illegally assessed deficiencies. *See Beck,* 676 F.2d at 1164. Whether such a recovery was "just" was relevant in deciding whether to affirm the Illinois district court's refusal to grant the taxpayer an injunction covering the entire amount of the illegal assessments. For the

reasons we have already stated, however, Congress has not authorized courts to do justice in deciding claims for refunds of taxes not legally assessed or collected. Equitable considerations simply are not relevant to decisions on whether the taxpayer is entitled to a refund of illegally assessed taxes.

■ The government's additional argument in favor of allowing it to retain, at a minimum, the overpayments the taxpayer made in 1964 and 1967 based on the doctrine of recoupment is equally unavailing. The Supreme Court recently examined the doctrine in *United States v. Dalm,* 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). In *Dalm,* the Supreme Court wrote:

In sum, our decisions in *Bull [v. United States,* 295 U.S. 247 (55 S.Ct. 695, 79 L.Ed. 1421) (1935)] and *Stone [v. White,* 301 U.S. 532 (57 S.Ct. 851, 81 L.Ed. 1265) (1937)] stand only for the proposition that a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time barred tax claim relating to the same transaction.

*Id.,* 110 S.Ct. at 1368. As noted, the doctrine of equitable recoupment is limited to instances in which the taxes or refunds at issue involved the "same transaction." *Id.*

■ The Supreme Court case the government cites in support of its recoupment argument involved taxpayers who had overpaid certain taxes in one particular taxable year when the IRS failed to assess other taxes actually owed for that same year until the statute of limitations had run. *See Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293, *modified w/o relevant change,* 284 U.S. 599, 52 S.Ct. 264, 76 L.Ed. 514 (1932). Tax law, however, limits the availability of such setoffs to single year situations. Recoupment is available against refund claims for taxes shown to be fairly due, though not assessed, for the same taxable year as the refund. Taxes fairly due but not properly assessed for one year cannot be set-off against refunds due for another year. The rules that limit equitable recoupment to the same transaction or occurrence out of

which the plaintiff's cause of action arose is strictly applied in federal tax law. Each transaction is bounded by a single taxable year, and each taxable year is treated as a separate claim or cause of action. *See generally* 26 U.S.C.A. § 6214 (West 1989) (limiting jurisdiction of Tax Court so that it may only redetermine deficiency from particular single taxable year of dispute before it); *see also Ewing v. United States*, 914 F.2d 499, 504–05 (4th Cir.1990) (allowing IRS to retain overpayments for particular years since additional tax was actually due for those years, but ordering IRS to refund illegally assessed "overpayments" for other years), *cert. denied*, —— U.S. ——, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991).

■ Neither *Lewis* nor *Ewing* applies in our case since the taxpayer did not overpay and the IRS failed to assess in any single one of the taxable years involved. Instead, in the case before us, the taxpayer overpaid in some years; in other years the IRS failed to assess. Under the Internal Revenue Code, we view each year separately. Since the deficiencies and overpayments arose over separate years, they cannot be netted out or lumped together as one transaction like an account stated or the payment of taxes on one year's trust income, *see Stone*, 301 U.S. 532, 57 S.Ct. 851.

### IV.

For these reasons, we hold that the district court erred in granting summary judgment in favor of the government and denying the taxpayer's cross-motion for summary judgment. As we have explained, the IRS's assessments were illegal, and equitable considerations cannot avoid strict enforcement of the detailed rules the tax code prescribes for the assessment and collection of federal taxes. Therefore, the taxpayer is entitled to a refund of the amounts it paid "out of pocket" with respect to those assessments and is also entitled to recover the overpayments it made in 1964 and 1967.[10] Accordingly, we will re-

verse the order of the district court and remand with directions that it enter judgment in favor of the taxpayer.

BECKER, Circuit Judge, dissenting.

In the first of the four judicial opinions dealing with this controversy, Judge Marshall observed that "when the tax collector blunders ... the taxpayer will go free." *Philadelphia & Reading Corp. v. Beck*, No. 73–C–3138, slip op. at 13, 1980 WL 1734 (N.D.Ill. Aug. 29, 1980). Indeed! As the result of Mrs. Ballard's blunder, perpetuated by her superior in the IRS Kansas City regional office, the taxpayer, notwithstanding that it ultimately got exactly what it bargained for in its dealings with IRS, will receive what Judge Cummings in the second opinion in this case, and Judge Wright in the third opinion, described as a "windfall." *Philadelphia & Reading Corp. v. Beck*, 676 F.2d 1159, 1164 (7th Cir.1982); *Philadelphia & Reading Corp. v. United States*, 738 F.Supp. 143, 149 (D.Del.1990). And a windfall it is—one I calculate to be approximately $30 million ($10.5 million plus interest).

It may be that the world will little note nor long remember what happened to that $30 million, and that this case will be a painful and valuable lesson to the IRS that it must do unto the taxpayer as it (relentlessly) expects the taxpayer to do unto it. If so, the public's business will be all the better for it. Judge Hutchinson has written a fine and forceful exposition of why this must all be so, and in order to put my dissenting views in proper perspective, I begin with a brief summary of the majority's views.

First, the majority explains, with compelling logic, why neither lamentations such as I have uttered, nor appeals to rough justice (*e.g.*, the taxpayer "got what it bargained for"), nor even resort to equitable principles, can change the result. As the majority opinion develops, applying equitable principles or rough justice to tax refund cases would do inestimable mischief

---

**10.** To the extent that the taxpayer seeks interest on amounts "unlawfully collected" and "interest on those sums as allowed by law," *see* taxpayer's amended complaint at 5, *reprinted in* App. at 15, we leave to the district court in the first instance the task of determining the amount of the judgment to be entered in favor of the taxpayer.

to the rigorous statutory scheme embodied in IRC § 6213(a). Section 6213(a) requires the IRS to mail the taxpayer a notice of deficiency for each year's underpayment; provides the taxpayer with a 90–day period following mailing of the notice within which to seek a redetermination of the deficiency in tax court; and prevents the IRS from assessing or collecting any tax due until expiration of the 90–day period or the conclusion of any judicial proceedings, whichever is later. In the majority's view, unless some kind of equitable defense is available to the government (and in its view it is not), the IRS's undisputed failure to observe the statutory requirements of § 6213(a), and the consequent illegality of its assessments, inters its defense to the refund suit.

Second, recognizing that the IRS argues on a contract theory as well as from the statute, the majority, albeit somewhat cursorily, rejects the IRS's contract-based arguments as well. The majority reasons that the taxpayer's putative waiver of its right to receive a deficiency notice was not effective because the IRS failed to satisfy, in the proper chronological sequence, the express condition contained in the qualified Form 870. In the majority's view, that condition required an authorized representative of the IRS to sign the schedules of overassessments for the taxable years ending December 31, 1964 and December 31, 1967 *before* the IRS assessed the deficient taxes. As it turned out, the IRS got things backwards—the assessment of deficiencies preceded the scheduling of overassessments.

Although I agree with the other aspects of the majority's discussion, and particularly its discussion of the statutory collection requirements, we part company on what I describe as the contract issue. I believe that the taxpayer and the IRS entered into a contract, embodied in the Form 870 qualified waiver, and that the IRS substantially performed its end of the bargain in timely fashion (*i.e.*, it did not materially breach its obligations). For this reason, amplified below, I would hold for the IRS, and deny the taxpayer's claim for a refund.

When a taxpayer executes an IRS Form 870, styled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," the taxpayer and the IRS effectively create an alternative mechanism, supplanting the otherwise applicable statutory scheme, for the assessment and collection of deficiencies. This arrangement typically benefits both parties and generally accelerates resolution of the dispute. Such an agreement supplants the Internal Revenue Code provisions requiring that the IRS mail a notice of deficiency and observe a 90–day waiting period prior to assessment and collection of the deficiency, and obviates the need for the procedural step whereby the taxpayer may petition the tax court for redetermination of the deficiency. On the other side, the agreement preserves the taxpayer's right to challenge the assessment in a refund suit, while ensuring that any interest it may owe on the deficiency ceases to accrue.[1]

When a Form 870 contains a conditional or qualified waiver such as the one at issue here, a taxpayer facing both deficiencies and overassessments receives the additional assurance that the former will not be collected until the latter are available to offset them in whole or in part. In this case, the taxpayer was assured that its roughly $10.5 million deficiency would not be collected until the $6.5 million in overassessments was scheduled. This assurance was of considerable value to the taxpayer because the overassessments required the approval of the Joint Committee on Taxation, a process which this case suggests would probably have taken longer than the statutory requirements for assessing deficiencies.

1. Absent the filing of a waiver, interest due on a deficiency is computed from the due date for the payment of such tax until the date it is actually paid; the filing of a waiver suspends the accrual of interest from the thirtieth day after the filing of the waiver until the IRS issues a notice and demand for payment of the deficiency.

As the majority details at length, the parties' neat arrangement for supplanting the statutory procedures went somewhat askew when Mrs. Ballard assessed the deficiencies on June 22, 1973, well before the 1967 and 1964 overassessments were scheduled in August 1973 and October 1973, respectively. Indeed, the latter overassessment followed not only the assessment of deficiencies, but also the expiration of the extended statute of limitations for assessing the deficiencies, which ran on September 30, 1973. Based on this ordering of the events, and by analogy to the statutory collection scheme under which an assessment issued prior to the mailing of a notice of deficiency is forever deemed illegal and void, the majority concludes that the IRS failed to satisfy the precondition contained in Form 870 and thus cannot rely on that document as the basis for assessing the taxes at issue here.

I disagree. The reasoning of the taxpayer and the majority regarding the contract issue falters, in my view, at two critical junctures. First, although it is undeniable that the assessments preceded both the mailing of a notice of deficiency and the scheduling of overassessments, and that for purposes of the statutory collection regime such a chronology renders the assessments forever void and illegal, I fail to see why a similar result must obtain under the separate assessment mechanism created by agreement of the parties and embodied in Form 870. The critical language of that document states:

> This document shall be effective as a waiver of restrictions on assessment and collection with respect to taxable years ending December 31, 1965 and December 31, 1966 and the taxable period ending April 18, 1968, on the date the schedule of overassessments with respect to the taxable years ending December 31, 1964 and December 31, 1967 is signed by an authorized representative of the Internal Revenue Service.

As I understand this language, it is clear that the taxpayer did not waive statutory "restrictions on assessment"—*i.e.*, its right to receive a notice of deficiency and its other statutory rights—until the specified overassessments were scheduled. Thus, I have no doubt that this language forbade the IRS from collecting on an assessment, absent the mailing of a notice of deficiency, before it scheduled the overassessments. However, *once the overassessments were scheduled*, I see nothing in this language that attaches any import to when the assessment was made, or, more particularly, whether the assessment preceded the scheduling of the overassessments. The agreement simply states that the taxpayer waives its otherwise applicable statutory pre-assessment rights on the day that a schedule of overassessments for the two specified years is signed. As of that date, as I read this agreement, the taxpayer renounces any interest in notices of deficiency, and in all else that typically precedes assessment. Nothing in this language leads me to believe, however, that on that date the taxpayer should care one way or the other about when, as a technical matter, the assessment was issued.

In short, it is my view that, although a notice of deficiency mailed after an assessment can never "rehabilitate" the illegal, premature assessment, there is nothing in the language of the qualification to this Form 870 that prevents a scheduling of overassessments from "rehabilitating" a premature assessment. The majority apparently assumes that a premature assessment is forever illegal and void *both* for purposes of the statutory assessment route and the contractual route embodied in the qualified Form 870. While this is clearly the correct result in regards to statutory assessment, I discern nothing to compel this conclusion with respect to the agreement of the parties. There is no doubt that the statute requires a notice of deficiency to be issued before an assessment is made, and there is no doubt that the Form 870 requires that the overassessments be scheduled before the taxpayer is deemed to have waived the right to a notice of deficiency. It seems to me, however, that the majority incorrectly merges these two propositions, and thus concludes that the overassessments had to be scheduled before the assessment was issued.

Second, the majority and the taxpayer ignore the fact that the IRS eventually did schedule the overassessments for both 1964 and 1967. Admittedly, the scheduling for 1964 was not accomplished until October 1973, one month after the extended statute of limitations for collecting the deficiencies had expired on September 30. This fact is problematic. The Form 870 at issue says nothing about how long the taxpayer intended for the arrangement to remain open to the IRS's fulfillment of its conditions. And while it is arguable that it was open-ended, I think it more reasonable to conclude that the parties intended that the agreement would remain in force only until the statute of limitations had run on the statutory collection period.

In this case, however, I do not think that scheduling the 1964 overassessment after the expiration of the statute of limitations constitutes a material breach of the IRS's required performance. The facts are (1) that the 1967 overassessment was scheduled in August 1973, well before the September 30, 1973 expiration of the statute of limitations; and (2) that the 1967 overassessment involved $6,237,660, whereas the 1964 overassessment was only $231,991. In other words, over 96% of the taxpayer's overassessments were scheduled *before* the statute of limitations expired. The IRS's failure to schedule timely the remaining 4% is, to my mind, immaterial. It is hornbook law that only a material breach of contract obligations will entitle the non-breaching party to relief.

In sum, I disagree with the majority that the qualified Form 870 required the IRS to schedule the overassessments *before* any assessment technically was issued. The agreement simply required that, at some time prior to the expiration of the statute of limitations, the IRS sign the specified overassessments. As of that date, the taxpayer waived all its statutory pre-assessment rights and submitted willingly to assessment. I believe further that, in the context of the entire Form 870 agreement and the millions of dollars involved, the post-expiration scheduling of the $231,991 overassessment for 1964 constituted, at most, an immaterial breach of the IRS's required performance. I thus would hold that the IRS substantially performed its obligations under the qualified Form 870 in August 1973, more than one month prior to the expiration of the statute of limitations, when it signed the schedule for the taxpayer's 1967 overassessment. Because the IRS did live up to its end of the bargain in a timely fashion, I believe this case is distinguishable from *Steiner v. Nelson*, 259 F.2d 853 (7th Cir.1958), *Parsons Corp. v. United States*, 835 F.2d 1435 (9th Cir.1987), and the other cases upon which the majority or the taxpayer rely.

I thus would affirm the judgment of the district court, although on different grounds. Hence, I respectfully dissent.