Arthur E. HEMPEL, Jr., Rosemary S. Hempel, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 92–2499.

United States Court of Appeals,
Eleventh Circuit.

Feb. 16, 1994.

further proceedings in this matter pursuant to 28 U.S.C. § 46(c).

B. Grav Gibbs, St. Petersburg, FL, for plaintiffs-appellants.

Gary R. Allen, Chief, Appellate Section, U.S. Dept. of Justice, Tax Div., Mary Frances Clark, Washington, DC, for defendant-appellee.

Before KRAVITCH and BLACK, Circuit Judges, and DYER, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The Internal Revenue Code's Anti–Injunction Act generally forbids courts to restrain the Internal Revenue Service (IRS) from assessing[1] or collecting a tax. 26 U.S.C. § 7421(a) (1988).[2] One exception to this rule arises when the IRS fails to send the taxpayer a statutorily required notice of deficiency, or "90–day letter," prior to assessment; in such a case, an injunction may issue. *See id.* §§ 6212(a), 6212(c), 6213(a), 7421(a).[3] If, however, the taxpayer waives

---

1. "The 'assessment,' essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." *Laing v. United States,* 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 479 n. 13, 46 L.Ed.2d 416 (1976). "[I]t is the assessment, and only the assessment, that sets in motion the collection powers of the IRS...." *Philadelphia & Reading Corp. v. United States,* 944 F.2d 1063, 1064 n. 1 (3d Cir.1991).

2. Once a proper assessment has been made, the taxpayer's recourse is to pay the tax and bring a suit for refund. *See, e.g., Bob Jones Univ. v.*

*Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2047, 40 L.Ed.2d 496 (1974); *Hobson v. Fischbeck,* 758 F.2d 579, 581 (11th Cir.1985).

3. "Normally, the Internal Revenue Service may not 'assess' a tax or collect it ... until the taxpayer has had an opportunity to exhaust his administrative remedies, which include an opportunity to litigate his tax liability fully in the Tax Court...." *Commissioner v. Shapiro,* 424 U.S. 614, 616–17, 96 S.Ct. 1062, 1066, 47 L.Ed.2d 278 (1976) (citations and footnote omitted). The notice of deficiency is the taxpayer's jurisdictional ticket to the tax court. *Laing,* 423 U.S. at 165

his or her right to receive a deficiency notice, the general rule applies and neither assessment nor collection may be enjoined. *See* 26 U.S.C. § 6213(d) (authorizing taxpayer to waive notice).[4]

The question in this case is whether the taxpayers, Arthur and Rosemary Hempel, waived their right to a statutory notice of deficiency with respect to certain taxes assessed against them. The district court dismissed their action for injunctive relief from assessment. Although we disagree with the reasoning of the district court, we hold that dismissal was proper for other reasons. Accordingly, we affirm the judgment of the district court.

## I.

The taxpayers invested in a tax shelter operated by the Nitrol Corporation. In connection with this venture, the taxpayers claimed losses and credits on their federal income tax returns for tax years 1977 through 1981. The IRS later audited the shelter and disallowed certain losses and credits claimed by numerous Nitrol investors, including the taxpayers.[5]

The limitation period within which the IRS must assess a deficiency in income tax is generally three years from the date the return was filed. 26 U.S.C. § 6501(a). That period may be enlarged, however, by consent of the taxpayer. *Id.* § 6501(c)(4). Beginning in 1980, the taxpayers executed a series of such consents.[6] This process culminated on July 15, 1985, when the taxpayers signed a

Form 872–A, or Special Consent to Extend the Time to Assess Tax.[7] The 872–A extended the limitation period for assessment until "the 90th ... day after :.. the Internal Revenue Service office considering the case receive[d] Form 872–T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s)." [8] The time for assessment was thus prolonged indefinitely, with the taxpayers assuming the burden of affirmatively terminating their consent.

In the meantime, several other Nitrol investors brought an action in the United States Tax Court challenging the IRS's ruling disallowing the losses and credits. These cases were consolidated under the case name *Sutton v. Commissioner.*[9] Because the controlling issues in *Sutton* were identical to those in the taxpayers' case and because the taxpayers' attorney also represented the *Sutton* litigants, the taxpayers on January 8, 1985 entered into a Closing Agreement with the government, submitting to a "final and conclusive resolution" of their dispute with the IRS.[10] By this agreement the taxpayers consented to be bound by the decision in *Sutton* and to be assessed "on a basis ... consistent with" that case.[11] In short, the taxpayers and the IRS agreed to "piggyback" on the *Sutton* case, thereby avoiding further litigation expenses. With respect to procedural issues, paragraph 8 of the closing agreement provided as follows:

n. 4, 96 S.Ct. at 477 n. 4. "If the Internal Revenue Service does attempt to collect the tax ... before such exhaustion of remedies in violation of § 6213, the collection is not protected by the Anti–Injunction Act and may be restrained by a United States district court at the instance of the taxpayer." *Shapiro,* 424 U.S. at 617, 96 S.Ct. at 1066.

4. Other exceptions to the Anti–Injunction Act exist, but none apply here. *See* 26 U.S.C. § 7421(a).

5. The IRS determined that the investors had entered into the program without the requisite intent to make a profit.

6. *See* R. 1–20, Gov't exh. C–1 (Form 872, Consent to Extend the Time to Assess Tax, executed by taxpayers on November 7, 1980).

7. The 872–A agreement went into effect on July 23, 1985, when it was executed by a representative of the government.

8. R. 1–20, Gov't exh. C–2.

9. The opinion of the tax court ultimately was reported at 84 T.C. 210, 1985 WL 15310 (1985), *aff'd,* 788 F.2d 695 (11th Cir.1986).

10. R. 1–20, Gov't exh. C–5. Section 7121(a) of the Internal Revenue Code authorizes the Secretary of the Treasury to enter into a written agreement with any person relating to that person's tax liability. With certain exceptions not relevant here, "such agreement shall be final and conclusive" as to the matters agreed upon. 26 U.S.C. § 7121(b).

11. R. 1–20, Gov't exh. C–5 at 2.

8. The amount of any federal income tax that becomes due from the taxpayers under the terms of this agreement may be assessed by the Commissioner of Internal Revenue on or before the expiration of the one year (365 days) period following the date on which the decision in the controlling cases become [sic] final, notwithstanding the expiration of any period of limitation on assessment and collection otherwise prescribed by Internal Revenue Code section 6501. *This assessment shall be made without the issuance of the notice of deficiency authorized by ... section 6212 and without regard to the restrictions otherwise imposed by ... section 6213.*[12]

After trial in the *Sutton* matter, the tax court ruled in favor of the government. *Sutton v. Commissioner,* 84 T.C. 210, 226, 1985 WL 15310 (1985). This court affirmed on April 16, 1986. *Sutton v. Commissioner,* 788 F.2d 695, 696 (11th Cir.1986). For purposes of the instant case, the *Sutton* decision became final on that date.

No further action occurred in this case for nearly two years. Then, on February 17, 1988, the IRS received from the taxpayers a signed Form 872–T, terminating their special consent to extend the time to assess.[13] By the terms of the earlier-executed 872–A, the limitation period for assessment was thus set to expire ninety days later, on May 17, 1988. Accordingly, on April 14, 1988, the IRS assessed the taxes due under the closing agreement—taxes which the taxpayers owed pursuant to the result in *Sutton.* The IRS did not send the taxpayers a notice of deficiency prior to assessing.[14]

The taxpayers brought this action to enjoin collection of the taxes assessed pursuant to the closing agreement. Although they acknowledged that courts generally have no power to restrain the assessment or collection of a tax, the taxpayers asserted that the aforementioned exception to that rule applied

because the IRS never sent them a statutory notice of deficiency covering the taxes assessed. And although they conceded that in the closing agreement they waived their right to receive a deficiency notice, that waiver, they argued, was contingent upon the assessment being made within 365 days after the conclusion of the *Sutton* litigation. Because the IRS did not assess within that time, they reasoned, a deficiency notice was required, the exception to the Anti–Injunction Act applied, and the district court had jurisdiction to entertain their suit for injunctive relief. The government rejoined that the taxpayers' express waiver of their right to receive a 90–day letter was not confined to the one-year period following *Sutton.* As such, the IRS argued, the district court lacked jurisdiction to entertain the taxpayers' action.[15]

The district court dismissed the taxpayers' suit. The court stated that the taxpayers "appear[ed] to have executed a *conditional* waiver, limited to the one year period following the *Sutton* resolution."[16] Nevertheless, the court concluded that the taxpayers had not suffered prejudice from the government's failure to send them a 90–day letter in view of the fact that "the legitimacy of [the Nitrol] tax shelter had been litigated in the tax forum, with plaintiffs' counsel directly involved ... [and that] plaintiffs agreed to be bound by the result of those 'controlling cases.'"[17]

▮ We review *de novo* both a dismissal for lack of jurisdiction and the interpretation of a closing agreement. *Woodruff v. Department of Labor,* 954 F.2d 634, 636 (11th Cir. 1992) (dismissal for lack of jurisdiction); *Zaklama v. Mt. Sinai Medical Center,* 906 F.2d 650, 652 (11th Cir.1990) (contract interpretation); *see United States v. Lane,* 303 F.2d 1, 4 (5th Cir.1962) (holding that a clos-

---

**12.** *Id.* (emphasis added). The scope of the closing agreement was expressly limited to certain items related to the Nitrol shelter.

**13.** R. 1–20, Gov't exh. C–6.

**14.** A short time later the IRS did send the taxpayers a 90–day letter pertaining to several other

adjustments not covered by the closing agreement.

**15.** R. 1–19 at 17.

**16.** R. 1–26 at 8 (emphasis in original).

**17.** *Id.*

ing agreement is interpreted under ordinary principles of contract law).[18]

## II.

The taxpayers contend that the district court committed error by grounding its decision to dismiss on certain equitable considerations. Specifically, they assert that the court erred when it concluded that the assessments were fair notwithstanding the absence of a deficiency notice because the taxpayers had agreed to be bound by the decision in *Sutton.* Equitable factors like fairness, the taxpayers argue, are irrelevant to the straightforward jurisdictional question in this case: whether the IRS was required to issue a 90–day letter prior to assessment or whether the taxpayers waived their right to receive such a letter. According to the taxpayers, although the court apparently agreed with them that the waiver was contingent upon the IRS assessing the amount due within one year after *Sutton*—a contingency which was not fulfilled—the district court erred in relying upon equitable factors and dismissing the taxpayers' suit for injunctive relief.

■ We agree that equitable considerations were irrelevant in this instance. Equitable factors are relevant to the ultimate decision whether to grant an injunction. *See, e.g., Bob Jones Univ. v. Simon,* 416 U.S. 725, 742 n. 16, 94 S.Ct. 2038, 2049 n. 16, 40 L.Ed.2d 496 (1974). Jurisdictional questions, in contrast, are purely legal in nature. The sole issue in this case is whether the taxpayers waived their right to receive a statutory notice of deficiency. Thus, the district court erred to the extent it relied on equitable considerations in dismissing the taxpayers' action.

■ Our conclusion that the district court erred in its reasoning, however, does not mandate reversal. The district court's judgment may be affirmed if it is correct for any reason. *See, e.g., United States v. $121,-100.00,* 999 F.2d 1503, 1507 (11th Cir.1993); *Misabec Mercantile, Inc. de Panama v. Donaldson, Lufkin & Jenrette ACLI Futures,*

*Inc.,* 853 F.2d 834, 839 n. 13 (11th Cir.1988). As explained more fully in the next section, we hold that the taxpayers unconditionally waived their right to receive a statutory notice of deficiency prior to the assessment of the taxes in question. Accordingly, no exception to the tax code's Anti–Injunction Act applied and the taxpayers' action was properly dismissed for lack of subject matter jurisdiction.

## III.

■ The controlling question presented is whether paragraph 8 of the closing agreement conditioned the taxpayers' waiver of their right to receive a deficiency notice upon the IRS assessing the taxes due under the agreement within 365 days after the conclusion of the *Sutton* litigation. *See Philadelphia & Reading Corp. v. United States,* 944 F.2d 1063, 1072 (3d Cir.1991) (citing *Ventura Consol. Oil Fields v. Rogan,* 86 F.2d 149, 154 (9th Cir.1936), *cert. denied,* 300 U.S. 672, 57 S.Ct. 610, 81 L.Ed. 878 (1937)) (explaining that a taxpayer may impose conditions on her waiver of her right to receive a 90–day letter). The IRS did not assess the taxes in question until almost two years after this court's decision in *Sutton.* If the waiver was merely conditional, then the IRS had to send a deficiency notice prior to assessment, and because no notice was sent, the taxpayers were eligible for an injunction against collection of the tax. On the other hand, if the taxpayers' waiver was unconditional, then the exception to the Anti–Injunction Act upon which the taxpayers rely did not apply and the dismissal of the taxpayers' action was proper.

In support of their position that they waived the notice requirement only conditionally the taxpayers point to the first sentence of paragraph 8, which immediately precedes the waiver. That sentence states that

> [t]he amount of any federal income tax that becomes due from the taxpayers under the terms of this agreement may be assessed by the Commissioner of Internal Revenue on or before the expiration of the

---

**18.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are circuit precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

one year (365 days) period following the date on which the decision in the controlling cases become [sic] final, notwithstanding the expiration of any period of limitation on assessment and collection otherwise prescribed by Internal Revenue Code section 6501.[19]

The waiver provision follows: "This assessment shall be made without the issuance of the notice of deficiency" required by the Internal Revenue Code.[20] The taxpayers contend that the phrase "may be assessed ... on or before the expiration of the one year ... period following [the final decision in *Sutton*], notwithstanding the expiration of any [statutory] period of limitation" constitutes a contractual term of limitation, restricting the assessment power of the IRS. They argue that when this language is read together with the waiver provision it means their deficiency-notice waiver was valid only if the Commissioner assessed within one year after *Sutton*, and that after that the IRS could not assess unless it first issued a notice of deficiency.

The taxpayers' proposed construction of paragraph 8 is manifestly unreasonable for two reasons. First, it is inconsistent with the plain language and structure of paragraph 8. Second, it is illogical in view of the circumstances surrounding the execution of the closing agreement.

### A.

The waiver provision identifies "This assessment" as the one that "shall be made without the issuance of the notice of deficiency."[21] "This assessment" refers to the assessment described in the first sentence of paragraph 8—the assessment of "any federal income tax that becomes due from the taxpayers under the terms of this agreement."[22] Thus, in plain language the taxpayers waived their right to receive a notice of deficiency with respect to any assessment made pursuant to the closing agreement. Stated otherwise, the second sentence of paragraph 8—the waiver provision—was tied directly to the first sentence of paragraph 8, the provision addressing the IRS's power to assess the amount due under the closing agreement. Hence, the taxpayers' deficiency-notice waiver may be deemed confined to the one-year period following *Sutton* only if the IRS's power to assess the amount due under the closing agreement was likewise limited to that one-year period. If, conversely, the IRS's right to assess was not limited to the year after *Sutton*, then neither was the taxpayers' waiver.

In their complaint seeking injunctive relief, their memorandum of law to the district court, and their brief to this court, the taxpayers took the position that the IRS's failure to assess within a year after *Sutton* did *not* preclude the IRS from assessing the tax due under the closing agreement. They simply alleged that a prerequisite to assessment—the issuance of a notice of deficiency—had not been fulfilled.[23] In their brief to this court, for example, the taxpayers argued that "assessments made beyond [the one-year] time frame of the limited waiver were illegal *unless preceded by the required Notice of Deficiency.*"[24] Thus, the taxpayers did not dispute that the IRS lawfully could have assessed the taxes in question notwithstanding the expiration of the one-year period following *Sutton.*

Because the scope of the deficiency-notice waiver was tied by the language of paragraph 8 to the IRS's power to assess the amount due under the closing agreement and because it is undisputed that the IRS was permitted to assess more than a year after *Sutton*, the taxpayers' waiver remained in force after the expiration of that one-year period. The taxpayers' position that their waiver expired a year after *Sutton* but that the IRS's power to assess under the closing

19. R. 1–20, Gov't exh. C–5 at 2.

20. *Id.*

21. *Id.*

22. *Id.*

23. *See, e.g.*, Appellant's Brief at 7; R. 1–1 (Complaint to Enjoin Collection of Invalidly Assessed Taxes); R. 1–21 (Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment).

24. Appellant's Brief at 7 (emphasis added).

agreement did not similarly terminate at that time directly contradicts paragraph 8, which *links* the waiver to the IRS's power to assess. The taxpayers' argument is, in short, untenable.

Even if paragraph 8 somehow could be interpreted as providing that the government's obligation to send a 90-day letter was separate from its power to assess, we could not reasonably conclude that the one-year limit applied to the former provision rather than the latter one. The "one year" provision appears in the first sentence of paragraph 8, the one affirming the government's power to assess the tax due under the closing agreement: *"The amount of any federal income tax that becomes due from the taxpayers under the terms of this agreement ... may be assessed ... on or before the expiration of the one year ... period."* [25] To adopt the taxpayers' stance in this case would be, in essence, to remove the unitalicized language from this sentence and to insert it in the subsequent sentence providing for the deficiency-notice waiver. We will not rewrite the parties' contract.[26]

## B.

In addition to being inconsistent with the language and structure of paragraph 8, the taxpayers' conditional-waiver argument fails the test of practical sense. The taxpayers offer no rational explanation—nor can we discern one—for placing in the closing agreement a provision dispensing with the requirement of a 90-day letter for the one-year period following *Sutton* yet resurrecting the requirement thereafter. The purpose of a deficiency notice is to enable the taxpayer to petition the United States Tax Court for redetermination of a deficiency without first having to pay the tax. *See supra* notes 2, 3. By contrast, the whole point of the closing agreement in this case was to obviate the need for the taxpayers to litigate in the tax court. The stated impetus for the agreement was "the parties['] desire to provide for the *final and conclusive resolution* of [their] dispute" regarding the Nitrol tax shelter.[27] Thus, a 90-day letter would have served no rational purpose, whether issued before or after the first anniversary of *Sutton*.

The taxpayers argued in the district court that a deficiency notice would have served a rational function notwithstanding their agreement to be bound by *Sutton:* it would have enabled them to seek a redetermination in the tax court without first having to pay the tax had the assessments not been made "on a basis that is consistent with" that case.[28] As the district court wrote, however, in rejecting this argument:

> Plaintiffs do not identify any language in the closing agreement to support this qualification, nor do they explain why their situation merits particularized treatment.

We note very briefly, however, that even if we were inclined to consider it, this argument too would be insupportable. In the first place, the taxpayers executed Form 872-A, the indefinite extension of the statute of limitation, approximately six months after entering into the closing agreement. This timing casts doubt on the taxpayers' argument that the parties agreed to supplant the statutory limitation period. Furthermore, nothing in the language of paragraph 8 purports to replace completely the limitation period of 26 U.S.C. § 6501. As discussed in Part III-C of this opinion, paragraph 8 serves only to *extend* the limitation period in the event that the statutory period expired before *Sutton*'s first anniversary, and thus before the IRS had a reasonable opportunity to assess the taxes due under the closing agreement in accordance with the decision in *Sutton*.

**25.** R. 1–20, Gov't exh. C–5 at 2 (emphasis added).

**26.** At oral argument, the taxpayers changed their tack, implicitly acknowledging that the waiver and the IRS's right to assess were inextricably linked by the terms of paragraph 8, and arguing that *both* the waiver and the government's right to assess were confined to the one-year period following *Sutton*. In effect, they asserted that paragraph 8 substituted for the statutory limitation period for assessment—which expired 90 days after the IRS received the taxpayers' Form 872-T—a contractual one that expired one year after this court's decision in *Sutton*. This contractual period was to take precedence over the statutory period regardless whether it turned out to be shorter or longer than the statutory one. As this argument is substantially different from the position the taxpayers advanced in the district court and in their brief to this court, they are precluded from relying on it now.

**27.** *Id.* at 1 (emphasis added).

**28.** R. 1–21 at 3.

The tax court [in *Sutton*] examined the legitimacy of the Nitrol tax shelter, and disallowed any losses and tax credits attributable to that program for the subject years. It does not seem particularly complex to apply that holding to the matter at hand.[29]

Moreover, even if a danger did exist that the assessment might not be made in compliance with *Sutton,* the taxpayers have not explained why the right to petition the tax court for a redetermination would have been afforded them only in the event that the IRS failed to assess within one year after *Sutton.* Certainly the ability to seek review of an allegedly erroneous deficiency determination would have been equally important during the first year after *Sutton* as it would have been later on.

## C.

If the first sentence of paragraph 8 did not impose a condition or limitation on either the IRS's power to assess or on the viability of the taxpayers' deficiency-notice waiver, what was the purpose of that contractual provision? A more reasonable interpretation is that, rather than restricting the government, paragraph 8 *protected* it, by assuring that the IRS would have a reasonable amount of time after *Sutton* to assess the taxes due under the closing agreement, "notwithstanding the expiration of any period of limitation on assessment and collection otherwise prescribed by Internal Revenue Code section 6501." This construction is consistent with the permissive language of the closing agreement. Paragraph 8 provides that "[t]he amount of any federal income tax that becomes due ... *may* be assessed ... on or before the expiration of the one year (365 days) period."[30] The typical language of provisions of limitation, in contrast, direct that a suit or act, to be valid, "shall" be brought or performed within the specified period of time. *See, e.g.,* 26 U.S.C. § 6501 ("Except as otherwise provided in this section, the amount of any tax

imposed by this title shall be assessed within 3 years ....").

The circumstances surrounding the execution of the closing agreement also lead us to believe that paragraph 8 was intended to benefit, and not confine, the IRS. At the time the agreement was signed, the limitation period on assessment was entirely within the control of the taxpayers. This was because the ordinary three-year limitation period had expired for all but one of the tax years in question and the parties were proceeding on the basis of the extensions granted by the taxpayers. According to the terms of Form 872–A the taxpayers could have terminated at *any time* their special consent to extend the period for assessment, even months before the conclusion of the litigation in *Sutton.* Had they done so, the IRS would have been unable to assess pursuant to the closing agreement before the ninety-day limitation period expired, as the closing agreement authorized the government to assess only if (and, thus when) it obtained a favorable judgment in *Sutton.* As a result, the government would have been barred forever from collecting these taxes.

Before the IRS reasonably could enter into the closing agreement, therefore, it had to have some guarantee that it would be able to assess any taxes due after the conclusion of the litigation in *Sutton,* regardless whether the taxpayers cut short the statutory limitation period on assessment by submitting prematurely Form 872–T. This need for protection explains why the parties included in the closing agreement a provision by which the IRS would have a minimum of one year to assess after *Sutton.* Paragraph 8 accomplishes that function by empowering the IRS to assess any taxes due under the closing agreement within a year after our decision in *Sutton* "notwithstanding the expiration of any period of limitation on assessment and collection otherwise prescribed by Internal Revenue Code section 6501."

---

29. R. 1–26 at 9 n. 6. And, of course, the taxpayers were not without a remedy in the event of an assessment inconsistent with *Sutton.* They still could have paid the tax and brought a suit for refund.

30. R. 1–20, Gov't exh. C–5 at 2 (emphasis added).

Of course, as events in fact transpired, the IRS did not need to invoke the protections of paragraph 8 because the taxpayers did not submit Form 872–T until well after the decision in *Sutton* became final. When the taxpayers did terminate their consent, the IRS assessed the amount due within ninety days, thus satisfying the statute of limitation.

Because the assessment was made within the statutory limitation period and comported with the closing agreement, the deficiency-notice waiver, which applied to "[t]his assessment," correspondingly was valid. It is logical that no deficiency notice was required prior to this assessment as the taxpayers' liability had been determined conclusively in the *Sutton* litigation. Having waived their right to receive a deficiency notice, the taxpayers were not entitled to have the district court consider their request for injunctive relief.

### IV.

Accordingly the judgment of the district court is AFFIRMED.

BLACK, Circuit Judge, concurring:

I concur with the majority opinion affirming the dismissal of the taxpayers' suit by the district court, especially since the controlling issues were identical to those in the related tax court case and the same attorney represented both the taxpayers and the other Nitrol investors.

I write only to underscore my position that, in enacting 26 U.S.C. § 7121, Congress intended a closing agreement to be "final and conclusive" as to the matters agreed upon by the taxpayer and the government, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact. *See* 26 U.S.C. § 7121(b). I do not believe that this opinion should be read to undermine the integrity of a closing agreement or that its efficacy be diluted in any way. Once a closing agreement is executed, it cannot be modified or the case reopened. *Id.* § 7121(b)(1).