DAVID R. SILVERMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MEREDITH M. SILVERMAN MARKS AND DAVID R. SILVERMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 21592–93, 21594–93.     Filed September 6, 1995.

*James P. Redding,* for petitioners.
*Robert E. Marum,* for respondent.

OPINION

RAUM, *Judge:* The Commissioner determined deficiencies in income taxes and an increased rate of interest on those deficiencies as follows:

*Docket No. 21594–93*

| Year | Deficiency | Increased interest sec. 6621(c)[1] |
|------|-----------|-----------------------------------|
| 1975 | $31,781 | 120% of interest due on $20,781 |
| 1976 | 51,979 | 120% of interest due on $50,356 |
| 1977 | 3,101 | 120% of interest due on $3,101 |

*Docket No. 21592–93*

| 1980 | 205 | - - - |
|------|-----|-------|

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case involves the interrelationship between indefinite extensions of periods of limitation for assessment and a closing agreement relating to a tax shelter awaiting a final decision in a controlling (or test) case relating to that tax shelter.

At the time the petitions in these consolidated cases were filed, David R. Silverman resided in Providence, Rhode Island, and Meredith M. Silverman Marks resided in Pawtucket, Rhode Island. Petitioners filed joint Federal income tax returns for the years 1975, 1976, and 1977. David R. Silverman (sometimes hereinafter referred to as Silverman or petitioner) filed an individual Federal income tax return for the year 1980.

The parties executed the following documents with regard to the statute of limitations for the years at issue:

| Year | Form No. | Date executed by | | Date extended |
| | | Petitioners | Respondent | |
| --- | --- | --- | --- | --- |
| 1975 | 872 | 04–04–79(H) | - - - | - - - |
| - - - | - - - | Undated(W) | 04–04–79 | 12–31–80 |
| 1975 | 872 | 12–13–80(H) | - - - | - - - |
| - - - | - - - | 12–12–80(W) | 12–15–80 | 12–31–81 |
| 1975 | 872–A | 12–15–81 | 12–18–81 | Indefinitely |
| 1976 | 872 | 01–14–80(H) | - - - | - - - |
| - - - | - - - | Undated(W) | 01–15–80 | 12–31–80 |
| 1976 | 872 | 12–13–80(H) | - - - | - - - |
| - - - | - - - | 12–12–80(W) | 12–15–80 | 12–31–81 |
| 1976 | 872–A | 12–15–81 | 12–18–81 | Indefinitely |
| 1977 | 872 | 01–06–81(H) | - - - | - - - |
| - - - | - - - | 03–13–81(W) | 03–16–81 | 12–31–81 |
| 1977 | 872–A | 12–15–81 | 12–18–81 | Indefinitely |
| 1980 | 872–A | Undated(H) | 01–23–84 | Indefinitely |

Each of the Forms 872–A provides that the amount of any income tax for the year covered by the Form 872–A

may be assessed on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872–T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872–T to the taxpayer(s); or (c) the Internal Revenue Service mails a notice of deficiency for such period(s); except that if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will end 60 days after the period during which the making of an assessment was prohibited. * * *

During the years 1975, 1976, 1977, and 1980 petitioner held a 1.4884-percent limited partnership interest in what appears to be a tax shelter named Hampton Associates 1975. The parties executed a Form 906, Closing Agreement on Final Determination Covering Specific Matters (the closing agreement). The closing agreement provided that the tax-payers' distributive shares of income, losses, and credits from Hampton Associates 1975 for the years at issue would be determined in the same manner as set forth in the final decision in *Schwartz v. Commissioner,* docket No. 6530–82 (the controlling case). Petitioners' representative executed the closing agreement on November 12, 1985, and the Government executed it on January 13, 1986. The closing agreement stated:

(b) The amount of any Federal Income Tax attributable to the determination in clause (a)(1) preceding may be assessed by the Commissioner of Internal Revenue on or before the expiration of the one year (365 days) period following the date on which the decision of the controlling case became final notwithstanding the expiration of any period of limitation on assessment and collection otherwise prescribed by Section 6501 of the Code.

On August 4, 1987, this Court issued an opinion in the controlling case, *Schwartz v. Commissioner,* T.C. Memo. 1987–381, and decision was entered under Rule 155. On April 19, 1991, the Court of Appeals for the Ninth Circuit in *Schwartz v. Commissioner,* 930 F.2d 920 (9th Cir. 1991), affirmed without a published opinion.

Thereafter, petitioners' representative executed and sent separate Forms 872–T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, covering the years 1975, 1976, 1977, and 1980, to the Andover Service Center, where they were received on July 7, 1993. They then were received by the Internal Revenue office considering the case. On September 23, 1993, prior to the expiration of the 90-day period provided in the Forms 872–A, the Commissioner sent a notice of deficiency to petitioners for the years 1975, 1976, and 1977, and to Silverman for the year 1980.

Petitioners argue that the statute of limitations bars the assessment of the taxes at issue. Section 6501(a) provides generally that any tax shall be assessed within 3 years after the return is filed. However, section 6501(c)(4) contains the following exception:

(4) EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

Petitioners and the Government, through the timely execution of a Form 872–A for each of the years at issue, indefinitely extended the time of assessment.

Nevertheless, petitioners' position is that the closing agreement entered into by the parties subsequent to the execution of the Forms 872–A terminated this indefinite extension.

Petitioners rely upon the following language in the closing agreement:

(b) The amount of any Federal Income Tax attributable to the determination in clause (a)(1) preceding may be assessed by the Commissioner of Internal Revenue on or before the expiration of the one year (365 days) period following the date on which the decision of the controlling case became final notwithstanding the expiration of any period of limitation on assessment and collection otherwise prescribed by Section 6501 of the Code.

It is petitioners' position that any assessment not made within 1 year after the decision in the controlling case became final is barred by the statute of limitations. We do not agree.

Closing agreements are specifically authorized by section 7121(a). Section 7121(b) goes on to provide that

SEC. 7121(b). FINALITY.—If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

Therefore, to the extent of matters agreed upon, the closing agreement is final absent a showing of fraud or malfeasance, or a misrepresentation of a material fact. See *Rink v. Commissioner,* 100 T.C. 319, 324 (1993), and cases cited, affd. 47 F.3d 168 (6th Cir. 1995).

The closing agreement here contains no language addressing the Forms 872–A. Closing agreements are interpreted using ordinary principles of contract law, which generally require that we look within the "four corners" of the agreement. *Rink v. Commissioner, supra* at 325. The operable language contained in the agreement states that the Commissioner "may" assess any tax, notwithstanding the expiration of any period of limitation. The use of the permissive "may" is intended to allow the Commissioner to perform an act that

otherwise would be barred. The provision is not required if the period of limitations has not otherwise expired.

In a carefully reasoned opinion in a case involving substantially identical facts, the U.S. District Court for the Southern District of New York considered this very issue in *DeSantis v. United States,* 783 F. Supp. 165 (S.D.N.Y. 1992). The court agreed with the IRS that the indefinite extension of the period for assessment in Form 872–A remained in effect even after the close of the 1-year period following the final decision in the controlling case. The court stated:

> The Closing Agreement states only that the IRS "may" assess taxes against plaintiff within one year after the * * * [controlling] decision became final "notwithstanding the expiration" of any period of limitations * * * [*Id.* at 169.]

The court further stated:

> The plain language of the provision indicates that it would not be implicated unless the period of limitations on assessment had expired. Thus, in the event that either plaintiff or the IRS had terminated the Form 872–A extension by submitting the Form 872–T before the resolution of the * * * [controlling] litigation, the IRS would be given an additional year within which to assess the tax. [*Id.*]

We agree with *DeSantis* in that respect and apply that interpretation to the similar closing agreement here. Had the parties intended to limit the period for assessment to the 1 year following the final decision in the controlling case, they could have so provided in explicit terms rather than using the merely permissive language of the closing agreement. Moreover, had petitioners themselves wished unilaterally to limit their exposure to the 1 year following the final decision in the controlling case, they could have done so by executing a Form 872–T at the same time they entered into the closing agreement. Indeed the purpose of the 1-year period in the closing agreement was to empower the Commissioner to make an assessment during that 365 days even if the taxpayers terminated the indefinite period during the year by a Form 872–T. That petitioners themselves shared that understanding of the closing agreement, and attached at least some continuing effectiveness to the indefinite period of extension agreed to by them, is reflected by their submission of a Form 872–T *after* the expiration of the 365-day period in the closing agreement. The period of limitations herein

remained open indefinitely until the Form 872–T was received plus 90 days thereafter.

A result analogous to that in *DeSantis* was also reached following an extensive analysis by the Court of Appeals for the Eleventh Circuit in *Hempel v. United States,* 14 F.3d 572 (11th Cir. 1994), which involved a substantially identical situation with respect to a tax shelter being litigated in a test or controlling case.[1] The court in *Hempel* stated:

A more reasonable interpretation is that, rather than restricting the government, paragraph 8 *protected* it, by assuring that the IRS would have a reasonable amount of time after *Sutton* [the controlling case therein] to assess the taxes due under the closing agreement, "notwithstanding the expiration of any period of limitation on assessment and collection otherwise prescribed by Internal Revenue Code section 6501." * * * [*Id.* at 579.]

The substantially identical relevant language of the closing agreements in *Hempel* and the present case served as a shield for the Government, as protection against the premature submission of Form 872–T by the taxpayer. Petitioners would turn that shield into a sword, and use it to cut down a timely assessment by the Commissioner. The permissive, rather than mandatory, language of the closing agreement does not support this effort.

Petitioners advance the idea that the closing agreement was a novation or substituted contract, and, therefore, the prior agreements (the Forms 872–A) are ineffective. Clearly the closing agreement is not a novation, for a novation is defined as "a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty." 2 Restatement, Contracts 2d, sec. 280 (1981).

The assertion that the closing agreement was a substituted contract fails to persuade us. We begin by questioning whether this substituted contract analysis is even proper. A substituted contract necessitates a preexisting duty on the part of the obligor.[2] The Commissioner had no preexisting

---

[1] Although *Hempel v. United States,* 14 F.3d 572 (11th Cir. 1994), arose in the context of an effort to enjoin assessment or collection, the court's analysis of the closing agreement is highly persuasive here.

[2] 2 Restatement, Contracts 2d, sec. 279 (1981), defines a substituted contract as follows:

(1) A substituted contract is a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty.

(2) The substituted contract discharges the original duty and breach of the substituted contract by the obligor does not give the obligee a right to enforce the original duty.

duty.[3] While this Court has stated that contract principles are significant in interpreting a consent to extend the period for assessment, *Grunwald v. Commissioner*, 86 T.C. 85, 89 (1986), it is well established that "A consent to extend the period for assessment of an income tax is essentially a unilateral waiver of a defense by a taxpayer and is *not a contract.*" *Id.* (emphasis added), and cases cited. No prior contract existed, and the Commissioner assumed no duty under the Forms 872–A.

However, were we to accept petitioners' substituted contract analysis, we do not agree that the closing agreement eliminated the indefinite extension of the period of limitations found in the Forms 872–A. The closing agreement makes no reference to the Forms 872–A. As indicated above, our interpretation of the closing agreement is that the 1-year time frame in which the Commissioner was empowered to make an assessment applied *only if* the indefinite extension previously was terminated. Absent this situation, the closing agreement had no effect on the period of assessment permitted by the Forms 872–A.

Petitioners attempt to show that it was their intent that the closing agreement supersede the Forms 872–A. Assuming this was their intent, it is not relevant here. The parties are bound by the agreement they signed, not by what they may have intended it to mean. As has been stated in the area of substituted contracts:

If the so-called waiver is made by a new contract or accord based on valid consideration, the requirements of the law must be the same as for the formation of any contract. There must be a manifestation of mutual assent, *but the actual mental intent is immaterial.* When a case of surrendering a right by a new contract is presented, where the apparent intent differs from the actual intent, the apparent intent controls. But the expressions generally found in the cases are somewhat misleading because they imply that actual intent is the vital test. It is only where words or actions are ambiguous and where more than one possible meaning might rightfully be ascribed to them by the party speaking or acting, that his actual intent becomes material. [5 Williston on Contracts, sec. 681, at 267–268 (3d ed. 1961); emphasis added; fn. refs. omitted.]

---

[3] Under petitioners' analysis the Commissioner is the obligor, because petitioners argue that the Commissioner was obligated to make an assessment within the 1 year following the final decision in the controlling case.

We find that there is no ambiguity in the closing agreement.[4] Therefore, petitioners' intent has no bearing on our decision.

Petitioners' conclusion that the closing agreement superseded the Forms 872–A was mistaken. This mistake provides no support for them. "[B]y excluding, as grounds for rescission, mistakes of fact or law, the statute contemplates that the parties may premise their agreement upon such a mistake." *Zaentz v. Commissioner,* 90 T.C. 753, 761–762 (1988).

As an alternative ground for supporting its position on the case as a whole, the Government places great weight on cases holding that the three events explicitly set forth in Form 872–A itself are the exclusive means for terminating the unlimited period of limitations otherwise fixed by Form 872–A. See, e.g., *Grunwald v. Commissioner,* 86 T.C. 85 (1986); *Podell v. Commissioner,* T.C. Memo. 1987–22. We note that of the cases thus cited by the Commissioner, only *DeSantis v. United States,* 783 F. Supp. 165 (S.D.N.Y. 1992), dealt with both a Form 906 closing agreement and a Form 872–A in that context.[5] In light of our discussion above on the principal issue, we need not reach that alternative issue.

As to the deficiencies determined by the Commissioner, petitioners do not claim that the Commissioner's determination is contrary to our decision in the controlling case, or that the deficiencies were calculated incorrectly. Petitioners raise no issue as to the amount or existence of the deficiencies other than an estoppel type argument. They claim that the notice of deficiency was issued in violation of the closing agreement, and, therefore, they should be afforded the opportunity to relitigate the substantive issues decided in the controlling case.

Petitioners' position is without merit. They may have incorrectly interpreted the closing agreement, but, as discussed above, this does not affect the validity of the closing agreement. Petitioners do not argue that any of the statutorily prescribed grounds for opening a closing agreement

---

[4] Petitioners cannot successfully argue that there was no mutual assent. Clearly there was a mutual assent in that the parties agreed to be bound by the controlling case and that the Commissioner could assess taxes up to 1 year following the final decision in the controlling case if the period of limitations had otherwise expired.

[5] As indicated in our discussion of the principal issue, we did express agreement with *DeSantis v. United States,* 783 F. Supp. 165 (S.D.N.Y. 1992), on the proper scope of the closing agreement, without considering the treatment in *DeSantis* of the alternative position regarding the alleged exclusive means for terminating the unlimited period of limitations of Form 872–A.

(i.e., fraud, malfeasance, or misrepresentation of a material fact) exist here. See sec. 7121(b). Petitioners remain bound by the closing agreement and by the decision in the controlling case. Contrary to petitioners' assertion, we are not selectively enforcing the closing agreement. We are enforcing the plain meaning of the agreement in its entirety.

The Form 872–A indefinite extension of the time for assessment was not terminated by the closing agreement. The statute of limitations does not bar the Commissioner's assessment. Petitioners remain bound by the closing agreement, and may not relitigate the deficiencies at issue. Any argument that petitioners are now deprived of the full opportunity of relitigating the validity of the tax shelter by reason of the present unavailability of documentary materials is therefore totally irrelevant.[6]

*Decisions will be entered for respondent.*

---

[6]Respondent objected to the admission of a number of exhibits. We have examined all of them and have decided that they do not affect our conclusions in this case. We therefore need not rule on their admissibility.